## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **No. 23-CR-00036 (RBW)** |
| **WILLIAM DUNFEE,** | |
| **Defendant.** | |

### MOTION TO DISMISS COUNT 2 (18 U.S.C. §§ 1512(C)(2) AND 2 – OBSTRUCTION)

WILLIAM DUNFEE, through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(3)(B), hereby respectfully requests that the Court dismiss Count Two of the *Indictment* (Doc. No. 14), which charges him with Obstruction of an Official Proceeding and Aiding and Abetting under 18 U.S.C. §§ 1512(c)(2) & 2. For the reasons discussed below, Count 2 fails to state a viable legal offense and/or fails to give proper due process notice to the Mr. DUNFEE and, accordingly, it should be dismissed.

At the outset, Mr. DUNFEE appreciates that, for the most part, some of the issues have previously been raised in other cases and rejected, both by several district court judges and recently by the D.C. Circuit in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). Nonetheless, Mr. DUNFEE wishes to raise and preserve these arguments especially in light of an anticipated petition for certiorari being filed in the *Fischer* case,[1] as well as the pendency of *United States v. Robertson*

---

[1] At present, Chief Justice Roberts granted the defendants in *Fischer* an extension of time for file the petition for certiorari such that it is now due on October 5, 2023. *See Fischer v. United States*, U.S. Supreme Court Case No. 23A136.

currently pending before the D.C. Circuit (Case No. 22-3062 (oral argument conducted May 11, 2023) and which address certain issues unresolved by *Fischer*.

## BACKGROUND

On September 30, 2022, a *Criminal Complaint* was filed against Mr. DUNFEE, alleging illegal activities arising from his presence at the U.S. Capitol on January 6, 2021.   Ultimately, on February 1, 2023, the Grand Jury issued a six-count *Indictment*.   In Count 2, the *Indictment* alleges that, on or about January 6, 2021, in the District of Columbia and elsewhere, Mr. DUNFEE:

> attempted to, and did, corruptly obstruct, influence, and impede an official proceeding; that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

Said criminal offense being Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 2.

## LEGAL AUTHORITY

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1),  so as to "provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution for the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.C. Cir. 2017).  A criminal defendant "may raise by pretrial motion any defense, objection, or request that the Court can  determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Rule 12 specifically provides that a defendant may also move to dismiss the Indictment for "failure to state an offense" and "lack of specificity."  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice

of the conduct it punishes, or is so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017)(quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The "void-for-vagueness doctrine" protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 584 U.S. __, __, 138 S.Ct. 1204, 1212 (2018).

The rule of lenity also applies if a statute's terms are ambiguous; once it is determined that a statute is ambiguous, the rule of lenity "requires that the more lenient interpretation prevail." *United States v. R.L.C.*, 503 U.S. 291, 293 (1992). This rule is rooted in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *Id.* at 305 (quoting *United States v. Bass*, 404 U.S. 348, 336 (1971)). The courts have "[r]eserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* "Whether a statutory term is unambiguous … does not turn solely on dictionary definitions of its component words. Rather, 'the plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole. *Yates v. United States*, 574 U.S. 528, 537 (2015)(quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

## ARGUMENT

**1. 18 U.S.C. § 1512(c)(2) prohibits only obstructive acts with respect to documents, records, or other objects.**

At the outset, Mr. DUNFEE maintains that that Count 2 of the *Indictment* fails to state an offense because 18 U.S.C. § 1512(c)(2) prohibits only obstructive acts with respect to a document,

record, or other object, and no such allegation exists in the *Indictment*.  While support for this argument previously existed in light of *United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022), the D.C. Circuit reversed *Miller* and rejected this interpretation in *Fischer*.  *See Fischer*, 64 F.4th at 336 ("§ 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)"); *id.* at 337 ("Section 1512(c) "encompass[es] all forms of obstructive acts").  Thus, while Circuit precedent now rejects the ensuing argument, it is offered, as noted above, to preserve the issue for potential resolution by the Supreme Court or otherwise.

Section 1512(c)(2) prohibits "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding," where "otherwise" is to be read in conjunction with the whole of 1512(c) and within its broader context.   Supreme Court case law supports such a reading.  Relying on *Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States*, 574 U.S. 528 (2015), former Attorney General Barr wrote:

> [I]t is clear that use of the word "otherwise" in the residual clause [of Section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision.  Unless it serves that purpose, the word "otherwise" does no work at all and is mere surplusage.  [An] interpretation of the residual clause as covering any and all acts that influence a proceeding reads the word "otherwise" out of the statute altogether. But any proper interpretation of the clause must give effect to the word "otherwise;" it must do some work.

*Memorandum from William Barr to Deputy Attorney General Rod Rosenstein and Assistant Attorney General Steve Engel of June 8, 2018* [hereinafter "*Barr Memo*"], at 4.[2]  After discussing *Begay* and *Yates* and how those cases emphasized that "specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all

---

[2]   Available at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf.

term used in the residual clause," the Attorney General continued,

> Consequently, under the statute's plain language and structure, the most natural and plausible reading of 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms of obstruction – i.e., impairing the availability or integrity of evidence – but cause this impairment in a different way than the enumerated actions do. Under this construction, then, the "catch all" language in clause (c)(2) encompasses any conduct, even if not specifically described in 1512, that is directed at undermining a proceeding's truth-finding function *through actions impairing the integrity and availability of evidence*.

*Id.* at 4-5 (emphasis omitted) (emphasis added).[3]

The similar structure of the residual clauses in Section 1519 (at issue in *Yates*) and Section 1512(c) allows their meanings to be interpreted similarly. Although 1519 and 1512(c) differ in that the residual clause in 1519 is not separated out by a line break, semicolon, or new section, while 1512(c)(2) is its own subsection, this does not resolve the breadth of "otherwise" and leaves ambiguity.  When ambiguity remains in a criminal statute after using traditional tools of interpretation, the canon of lenity applies.  *See infra*, at 19-20

---

[3] Although *Yates* was a plurality opinion, Justice Alito's concurring opinion also supports the argument limiting Section 1512(c)(2) to impairing evidence.  According to Justice Alito, the list of nouns, list of verbs, and title in Section 1519 all show that the statute in question did not reach the conduct of the defendant in that case.  *Yates*,  574 U.S. at 549 (Alito, J., concurring).  Regarding the nouns, Justice Alito considered the application of both *noscitur a sociis* and *ejusdem generis* to find that the term "tangible object" should refer to "something similar to records or documents." *Id.* at 549–50.  In this case, Section 1512(c)(1) refers to "a record, document, or other object." There is no allegation that Mr. DUNFEE interfered with any such item.  Section 1512(c)(2) should be read to comport with 1512(c)(1) and so should only apply to evidentiary objects.  In *Yates*, Justice Alito then looked at the verbs and noticed some glaring problems when trying to apply those verbs to any tangible object. *Id.* at 551 ("[h]ow does one make a false entry in a fish?"). Because there was no evidence Mr. DUNFEE "obstruct[ed], influence[d], or impede[d]" (nor will there ever be), the verbs in Section 1512(c)(2) have no object to reference.  Finally, Justice Alito pointed to the title of the statute: "[d]estruction, alteration, or falsification of records in Federal investigations and bankruptcy" and noted "[t]]his too points toward filekeeping, not fish."  *Id.* at 552.  Similarly, the title of Section 1512, *i.e.*, "[t]ampering with a witness, victim, or an informant," is likewise limited to certain manners of interfering with evidence, as well as certain types of evidence, in adjudicative or tribunal-like proceedings.  This statute's title clearly supports a finding that it was not intended to apply to all forms of obstructive conduct.

The former Attorney General noted that case law indicates the residual clause should only apply to "attempts to interfere with, or render false, evidence that would become available to a proceeding" or "to prevent the flow of evidence to a proceeding." *Barr Memo* at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014)(soliciting tips from corrupt cops to evade surveillance) and *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009)(disclosing identity of undercover agent to subject of grand jury drug investigation)); *see also, e.g.*, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009)(providing false testimony to a grand jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014)(making false statements to court during a preliminary injunction hearing); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th Cir. 2007) (convincing others to falsely claim ownership of a firearm); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007)("attempt[ing] to orchestrate" grand jury witness's testimony by sending notes to attorney who in turn "coached" the witness); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (obtaining false statements in a court proceeding); *United States v. Pugh*, 945 F.3d 9, 22–23 (2d Cir. 2019)(destroying evidence on several USB drives and iPod); *United States v. Burge*, 711 F.3d 803, 808 (7th Cir. 2013)(providing false answers to interrogatories in a civil lawsuit). As the former Attorney General correctly observed, "the most natural and plausible reading of 1512(c)(2)" requires conduct that impairs the integrity and availability of evidence. *Barr Memo,* at 4.

The foregoing construction of Section 1512(c)(2) is also consistent with its legislative history. Enacted as part of the Sarbanes-Oxley Act of 2002 and in response to the Enron accounting-fraud scandal, 18 U.S.C. § 1512(c) was enacted to strengthen criminal liability for "corporate malfeasance." Pub. L. No. 107-204, 116 Stat. 745; *see Yates*. 574 U.S. at 532 (2015)(Sarbanes-Oxley was designed to "protect investors and restore trust in financial markets

following the collapse of the Enron Corporation" after revelations that Enron's outside auditor had "systematically destroyed potentially incriminating documents"); *Fischer,* 64 F.4th at 358 (Walker, J., concurring in part)(18 U.S.C. § 1512(c) enacted "to strengthen existing obstruction-of-justice laws in the wake of the Enron accounting-fraud scandal").  Subsection (c) was added in part to ensure that there would be liability for those who destroyed records before an "official proceeding" had convened, even if they did not foresee one convening or if they had acted themselves, as opposed to causing others to act.  *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005). This subsection closed a loophole in 1512(b)(2), which only criminalizes directing others to obstruct proceedings and so allowed Arthur Anderson LLP to evade liability for destroying documents in the wake of the Enron scandal under Section 1512(b)(2), because that section only criminalized actions directed at another person.

Also, the Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations."  S. REP. NO. 107-146, at 2 (2002).  The Committee Report noted that much of Arthur Andersen's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id.* at 4.  Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6-7.  Thus, the legislative history of Section 1512(c)(2) "was expressly designed to 'clarify and close loopholes in the existing criminal laws *relating to the destruction or fabrication of evidence* and the preservation of financial and audit records.'" *Barr Memo*, at 5-6 (quoting S. REP. NO. 107-146, at 14-15) (emphasis added).  Congress closed that

loophole by passing subsection (c), and nothing in the legislative history suggest a broader purpose than that."  Likewise, the former Attorney General also observed that "[r]eading the residual clause as an all-encompassing proscription cannot be reconciled either with the other subsections of § 1512, or with the other obstruction provisions in Title 18 that must be read in *pari passu* with those in § 1512."  *Barr Memo, at 5.*

To interpret Section 1512(c)(2) as the government wants it to, *i.e.*, as an all-encompassing catch-all to include something so unique as protesting the election certification, would render all the specific terms in clause (c)(1) surplusage; moreover, it would swallow up all the specific prohibitions in the remainder of § 1512 – subsections (a), (b), and (d).  And, as Mr. Barr continued, "[m]ore than that, it would subsume virtually all other obstruction provisions in Title 18….   It is not too much of an exaggeration to say that, if § 1512(c)(2) can be read as broadly as being proposed, then virtually all Federal obstruction law could be reduced to this single clause."  *Id.*; *see also Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013)("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

In sum, the canons of construction employed by the Court in *Begay* and *Yates*, the text, structure, and the practical application of Section 1512(c)(2) as demonstrated in caselaw, as well as its legislative history, all support a holding that the "otherwise" clause in Section 1512(c)(2) must be construed in a similar vein to the terms that are in Section 1512(c)(1).  Thus, in order for Count 2 to sufficiently allege a violation, it must allege that Mr. DUNFEE took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding.  Because no such allegation exists in the *Indictment* here (nor can there ever be one), this Court should dismiss Count 2 of the *Indictment* alleging a violation of Section

1512(c)(2).

## 2.  18 U.S.C. § 1512(c)(2) prohibits only obstructive acts with respect an "official proceedings" which concerns "tribunal-like proceedings and not certification of the votes of the Electoral College.

Next, Mr. DUNFEE maintains that that Count 2 of the *Indictment* fails to state an offense because 18 U.S.C. § 1512(c)(2) prohibits obstructive acts only with respect to an "official proceeding" of which the certification of the votes of the Electoral College do not fall within the ambit thereof.  While the D.C. Circuit has concluded that the vote certification falls within the proceedings subject to the statue's prosecutions, *see Fischer*, 64 F.4th at 342-43, as before, the following argument is posited to preserve the issue for potential determination by the Supreme Court or otherwise.

Congress specifically defined the term "official proceeding" for purposes of, *inter alia*, Sections 1512 as follows:

> (A)    a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B)    a proceeding before the Congress;
> (C)    a proceeding before a Federal Government agency which is authorized by law; or
> (D)    a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1).  The language of the statute suggests that the term "official proceeding" refers to tribunal-like proceedings relating to adjudication, deliberation, and the administration of justice, all features which the electoral count lacks.  As such, though the counting of the electoral vote takes place in Congress, it is not an "official proceeding."

This Court recently examined the qualities of an "official proceeding," holding that the "plain meaning of § 1512(c)(2) and § 1515(a)(1)(A) is unambiguous—an informal, routine agency action like clearance-adjudication does not fall within the statutory definition of an "official proceeding." *United States v. Guertin*, 1581 F.Supp.3d 90, 97 (D.D.C. 2022), *aff'd* 67 F.4th 445 (D.C. Cir. 2023). Instead, this Court recognized that "throughout § 1512, Congress used the phrase 'official proceeding' in a manner that connotes *a formal hearing in which persons are called to appear*." *Id.* (emphasis added). By that standard, the electoral count likewise does not qualify as an "official proceeding."[4]

In *Guertin*, this Court began by noting that "official proceeding" can have a broad or narrow definition. This Court found for good reason that the narrow definition must be applied. *Id.* The Court then went on to analyze the text of the 1512(c)(2), observing that "official" appears before "proceeding," thus "textually limiting covered proceedings to those bearing indicia of officiality." *Id.* Next, the Court found that the definitional provisions in 1515(a)(1) support that reading, observing that the "word 'before' suggests an 'official proceeding' would typically entail convening a formal tribunal or adjudicative body before which parties are compelled to appear." *Id.* (internal citations omitted). After careful textual analysis, this Court held that taken together, Sections 1515(a)(1) and 1512 make clear that a covered "proceeding before a Federal government agency" must resemble a formal tribunal." *Id.* at 98. *See also United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013)(analyzing the text in and surrounding Sections 1515 and 1512 to determine that the phrase "a proceeding before a Federal Government agency which is authorized by law" in Section 1515(a)(1)(C) does *not* include FBI investigations); *United States v. Ramos*,

_____

[4]   In *Guertin*, the Government did not appeal the dismissal of the obstruction official proceedings offense. Additionally, *Fischer* did not consider or address the detailed analysis undertaken in *Guertin* as to the nature of what constitutes an official proceeding.

537 F.3d 439, 462–63 (5th Cir. 2008)(stating that "use[ of] the preposition 'before' in connection with the term 'Federal Government agency'… implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."). The foregoing analysis demonstrates that Section 1515(a)(1)(B) does not include the counting of electoral votes.

Just as the "criminal investigation" in *Ermoian* and the "routine certification" in *Guertin* did not meet the definition of an "official proceeding" under the obstruction of justice statute with the full context in mind, neither do the election certification proceedings meet that same definition here. Indeed, when considering Congress's role in counting electoral votes pursuant to the 12th Amendment and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15, it is clear that the electoral count is a ceremonial and administrative event, bearing no resemblance to a tribunal. The Twelfth Amendment and 3 U.S.C. § 15 place responsibility on Congress to count electoral votes *after* the states have already heard disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, J., concurring)(the "State's selection of electors shall be conclusive, and shall govern in the counting of the electoral votes."). The Joint Session does not have the power under the Constitution to actually reject the votes of any State. *See* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653, 1709 (2002) [hereinafter Kesavan].

Thus, though the election certification proceedings may be "official," no one is "before" the Congress in those proceedings; the proceedings entail no formal investigation or consideration of facts; and there is little to no discretion on the part of the Joint Session of Congress and its Presiding Officer. No parties are summoned to attend the proceedings; no witness or evidence is produced, offered or taken; and nothing is adjudicated by Congress. As such, the certification proceedings are nothing like tribunal proceedings, and have nothing in common with the "business

done in courts," or acts "done by the authority or direction of the court, express or implied."  *See Ermoian*, 752 F.3d at 1170 ("'[p]roceeding' is a word much used to express the business done in courts and "is an act done by the authority or direction of the court, express or implied" (quoting Black's Law Dictionary commentary, cited *supra*)).  Instead, the vote count is entirely ministerial and ceremonial.

The history of "objections" lodged at the Electoral Count further demonstrates the ceremonial nature of the electoral count.  Objections in the past were mostly made in the 1800s because of the confusion of when new states were admitted to the union and how that impacted whether their votes should count. Objections were ultimately rejected because it was determined that the Joint Session did not have the authority to judge the proceedings already had in the states. *See* Kesavan ,*supra* at 1678-94. In 1876, the most tumultuous American election thus far, Samuel Tilden and Rutherford Hayes were separated by one electoral vote and four states sent Congress multiple electoral returns. *Id.* Instead of the Joint Session resolving this issue (because Congress recognized that the Joint Session did not have the authority to do so), Congress formed a separate commission to sort through the chaos and decide the issues of fact and law presented. *Id*. Subsequently, to address issues like this in the future, Congress enacted the Electoral Count Act of 1887, placing on the states the responsibility to resolve disputes about electors and their appointments and certifications. Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLA. L. REV. 540, 543 (July 2004).

In 1969, there was an objection that a vote sent up to Congress from North Carolina should not be counted because it reflected the "faithless" elector who had refused to give his vote to Richard Nixon, despite Nixon winning the popular vote in that state. The objection was rejected,

and the vote at issue counted, because of the strong reminder of representatives such as R. Rarick who said:

> We are not election supervisors nor given the discretion to re-compute the vote received from a sovereign state. The Constitution clearly proscribes our duty as to 'count the electoral votes,' the ***ministerial*** function of a central collecting agency and a tabulating point.

*See* Kesavan, at 1694, 2022 (emphasis added).

For all these reasons, the Electoral Count is not "a proceeding" akin to a formal hearing and it is not "tribune-like,' as this Court found to be required in *Guertin*. Rather, it is a ceremonial meeting of both houses of Congress. While steeped in tradition, it decides nothing. It is a political performance conducted in order to give the country a feeling of finality over the already final election results.  As a result, the Electoral Count is not an "official proceeding" and Count 2 of the Indictment should be dismissed.

### 3.  18 U.S.C. § 1512(c)(2)'s requirement of "corruptly" is unconstitutionally vague.

Finally, Mr. DUNFEE maintains that that Count 2 of the *Indictment* fails to state an offense because the prohibition under 18 U.S.C. § 1512(c)(2) does not provide constitutionally required notice of what the statute prohibits because the contextual meaning of the requirement of "corruptly" is vague.  While the D.C. Circuit also addressed this issue in *Fischer*, there was a lack of consensus amongst the three members of the panel as to specific standard and, thus, to date, the D.C. Circuit (or the Supreme Court) has yet to pronounce an authoritative holding on the meaning of "corruptly" in Section 1512(c)(2).  In fact, in the *Robertson* case, currently pending before the D.C. Circuit (Case No. 22-3062), the Government acknowledged that *Fischer* does not provide precedential authority with respect to the interpretation of "corruptly" in 18 U.S.C. § 1512(c)(2).

***Unconstitutionally Vague***.  As applied to congressional proceedings, Section 1512(c)(2) fails to provide constitutionally required notice of what the statute prohibits because the contextual

meaning of "corruptly" is vague.   Alternatively, the only construction of "corruptly" that might enable the statute to pass constitutional muster is acting with the intent to obtain an unlawful advantage for oneself or an associate contrary to the due administration of justice.  But because the Indictment against Mr. DUNFEE fails to allege anything relating to the administration of justice, the Court should dismiss in any case.

In order to comply with the requirements of due process, a statute must give fair warning of the prohibited conduct.  *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964).  A statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)("a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries ... pursue their personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."). The allegations against Mr. DUNFEE in Count 2 of the Indictment fail in both respects.

In *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), the D.C. Circuit ruled that the word "corruptly" is prone to causing vagueness in a case concerning Section 1505, which criminalized:

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any

> pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

18 U.S.C. § 1505.

While Congress later added the definition of "corruptly" now applicable to Section 1505, the court in *Poindexter* analyzed the text, similar to here, without that context.  The court stated that the word "corruptly" in the text "must have some meaning, because otherwise the statute would criminalize all attempts to 'influence' congressional [matters] –  an absurd result that Congress could not have intended in enacting the statute." *Poindexter*, 951 F.2d at 377 (analyzing application of Section 1505 as applied to making false statements to Congress).   The court also found that dictionary alone did not make clear what that meaning is. First, there are several dictionary definitions:

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements."  A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F. 2d 843, 881-82 (D.C. Cir. 1990)).  Poindexter argued that, "so defined, 'corruptly' is vague as used in section 1505." *Id.* at 1378.  Mr. DUNFEE maintains that that, so defined, "corruptly" as used in Section 1512 is similarly vague as well.

The D.C. Circuit  acknowledged, and this Court must as well, that "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'"  *Id.* at 378.  And, just as the court in *Poindexter* found that "corruptly influencing" a congressional inquiry "does not at all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001," *id.*, this Court must

acknowledge that the conduct alleged in the instant *Indictment* – which also would clearly violate another statute (40 U.S.C. § 5104) – does not clearly fall within "corruptly…otherwise obstructing, influencing, or impeding" an official proceeding, using the dictionary definitions of "corruptly." That is because "[t]he various dictionary definitions of the adjective 'corrupt'" are themselves vague. *Id*. "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific – indeed they may be less specific – than 'corrupt.'" *Id*. at 378-79. Because of this, the D.C. Circuit found the word "corruptly" as used in Section 1505 "too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Id.* at 379.

Applying the logic of *Poindexter* to the present case, the only way the use of the word in Section 1512 can avoid the same fate is if the text or other context "clearly indicates a more specific meaning of the term 'corruptly,'" and Mr. DUNFEE's "conduct comes within that meaning." *Id*. at 379 (considering whether the use of the word, the legislative history of 1505, or judicial gloss on the statute provided a clear indication of a more specific meaning of the word in that statute, and ultimately concluding that it did not).

In *Poindexter*, the court first considered whether the usage of the word "corruptly" gave it more definition. *Id*. at 379. The court noted:

> the verb "corrupt" may be used transitively ("A corrupts B," i.e., "A causes B to act corruptly") or intransitively ("A corrupts," i.e., "A becomes corrupt, depraved, impure, etc."). So too, the adverbial form "corruptly" may have either the transitive or the intransitive sense. *See* 3 Oxford English Dictionary 974 (2d ed. 1989) ("corruptly" may mean either "by means of corruption or bribery," i.e., by means of corrupting another, or acting oneself "in a corrupt or depraved manner").

*Id*. at 379. But the court found that this analysis did not evade the vagueness in the word itself because "[e]ither a transitive or an intransitive interpretation would still be unconstitutionally vague…if specific content is not given to the word 'corruptly.' Reading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does

reading it to prohibit one from acting 'immorally' or 'improperly' oneself.  *Id.*   The same issue is presented here: No matter how "corruptly" is used in Section 1512(c)(2), *i.e.*, transitively or intransitively, the word lacks definition and remains too vague to provide constitutionally-required notice.

   ***Even within this District, the vagueness of "corruptly" is readily recognized.***   This Court's colleagues do not disagree that, in the abstract, "corruptly" is somewhat vague, and acknowledge that many of words often used to define it are of little help.  *See, e.g., United States v. Sandlin,* 575 F. Supp. 3d 16, 32 (D.D.C. 2021)("[b]ut defining 'corruptly' to involve 'wrongfulness' presents a closer question because it may be subject to the same infirmities that *Poindexter* found in the words 'immoral' and 'improper'")(citing *Poindexter*, 951 F.2d at 379; *United States v. Caldwell,* 581 F. Supp. 3d 1, 18 (D.D.C. 2021)(noting that *Poindexter* provided that "'the word 'corruptly' is vague" and that, "in absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application'").

   These other courts have found that that judicial gloss provides further, and sufficient, definition to the word "corruptly."  But they do not agree on what that gloss provides.  All appear to agree that "corruptly" requires proof of intent to obstruct an official proceeding, and that there must be some nexus, a relationship in time, causation, or logic, between the defendant's actions and the official proceeding in question.  But they do not all agree on the rest of the definition of "corruptly," or arrive at their conclusion exactly the same way.

   In *Sandlin*, while acknowledging that "the D.C. Circuit has not addressed the meaning of "corruptly" in § 1512(c)(2)," *Sandlin,* 575 F. Supp. 3d at 32, Judge Friedrich appears to conclude that judicial gloss provides notice that proof that a defendant acted "corruptly" also must include proof that he acted "wrongfully."  *Id.* at 32-34.  The court finds that "in considering the meaning

of "corruptly" (or wrongfully), courts have drawn a clear distinction between lawful and unlawful conduct," drawing "a line that is consistent with the definition of 'wrongful': that is contrary to law, statute, or established rule." *Id.* at 32. This meaning, and judicial opinions, according to this court, "identify a core set of conduct against which § 1512(c)(2) may be constitutionally applied – 'independently criminal' conduct . . . that is 'inherently malign'," in addition to being intended to obstruct a proceeding with which it has a nexus. *Id.* at 33. Thus, Judge Friedrich concluded that the statute is not vague as applied against the defendants accused of illegal conduct intended to obstruct an official proceeding, at least so long as it is inherently malign. *Id.* It appears that Judge Friedrich allows that more conduct may fall within the definition of "corrupt," but the court has declined to determine the outer counters of the concept. *Id.* at 33-34. Similarly, in *United States v. Nordean*, 579 F. Supp. 3d 28 (D.D.C. 2021), Judge Kelly, citing "important textual difference" between the statutes at issue in *Poindexter* and Section 1512(c), concluded that corruptly means at least "intentionally" and "wrongfully" and that the defendants in that case are alleged to have so-acted because they allegedly used "unlawful means." *Id.* at 49.

In *Caldwell,* Judge Mehta established a different judicial gloss on the requirement of "corruptly" under Section 1512(c), indicating it involves some level of a "consciousness of wrongdoing" undertaken with congressional proceeding. *Caldwell,* 581 F. Supp. 3d at 19-20. But apparently not all conscious wrongdoing suffices, per this opinion: whereas preplanning to obstruct, wearing paramilitary gear, forcible trespass and assault, and coordinated movement through the Capitol would apparently qualify as "corruptly", "mere political protest or trespass" into the Capitol would not rise to that level. *Id.* at 22. And in the case of Mr. DUNFEE, there is not allegations in the *Indictment* that his conduct rose to this level, as his alleged conduct, at worst, would fall *arguendo* into the real of "mere political protest or trespass".

In *United States v. Montgomery*, 578 F. Supp. 3d 54 (D.D.C. 2021),  Judge Moss offered his own nuance, regonizing that a predominant view of courts of appeals indicates corruptly requires the government to establish "improper purpose" and an "intent to obstruct."  *Id.* at 83.  However, Judge Moss allows that there could be further requirements, including proof that the defendant used "some unlawful method" and acted "with the hope or expectation of a benefit to oneself or a benefit to another person." *Id.* at 84 n.5 (internal citations omitted)).

All this various nuances and spins on just what it means to act "corruptly" under Section 1512(c)(2) demonstrate that the law was *not* so clear about what "corruptly" means, and that neither the text nor the judicial gloss on it provided Mr. DUNFEE or others with sufficient notice that it could be applied against their conduct.  Accordingly, the terms must be found unconstitutionally vague as used in Section 1512(c).

**Rule of Lenity Resolves the Ambiguity of "Corruptly".**  Finally, if recourse to any of the "traditional tools of statutory construction leaves any doubt" about the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512(c)(2), this Court could also invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)(quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971))).  As it was in *Yates*, "[t]hat interpretative principle is relevant here, where the Government urges a reading of [Section 1512(c)(2)] that exposes individuals to 20-year prison sentences" for obstructing any proceeding before Congress in any manner that it deems "corrupt." *Id.* (citing *Liparota v. United States*, 471 U.S. 419, 427 (1985))("[a]pplication of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining

criminal liability").

"In determining the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512, as it was for the Court in interpreting Section 1519 in *Yates*, it would also be "appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* (quoting *Cleveland*, 531 U.S. at 25, in turn quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952)).  Because Congress failed to do so and the government has accused Mr. DUNFEE such that it is not "clear and definite" that his conduct violates Section 1512(c)(2), this Court should dismiss Count 2 of the Indictment against him.

## CONCLUSION

For all of these reasons, and such others as may be advanced in further briefing on this motion and a hearing on this matter, Mr. DUNFEE respectfully requests that the Court dismiss Count 2 of the *Indictment*.

Respectfully submitted,

*/s/ Curt C. Hartman*
Curt C. Hartman (0064242)
THE LAW FIRM OF CURT C. HARTMAN
7394 Ridgepoint Drive, Suite 8
Cincinnati, OH  45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Thomas W. Kidd, Jr.
KIDD & URLING, LLC
9435 Waterstone Blvd, Suite #140
Cincinnati, Ohio 45249
(513) 733-3080
*tkidd@kiddurlinglaw.com*

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that, on the date of filing, a copy of the foregoing will be served upon counsel for the government through the Court's ECF system.

*/s/ Curt C. Hartman*