IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 23-cr-0036-RBW |
| | : |
| WILLIAM ROBERT DUNFEE, | : |
| | : |
| Defendant. | : |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTIONS TO DISMISS

The defendant, William Robert Dunfee, has filed a motion to dismiss count two of the indictment (ECF No. 33). The Defendant primarily argues that the text of 18 U.S.C. § 1512(c)(2) is not applicable to their conduct or is unconstitutionally vague. This Court, the D.C. Circuit, and many other district courts have rejected similar arguments. The Defendant's arguments should meet the same fate.

PROCEDURAL BACKGROUND

On February 2, 2023, a grand jury returned an Indictment (ECF No. 14), charging the Defendant with: (1) in count one, civil disorder, in violation of 18 U.S.C. § 231(a)(3); (2) in count two, obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2; (3) in count three, entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) in count four, committing disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) in count five, committing an act of physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); and (6) in count six, committing an act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5103(e)(2)(F).

1

On September 11, 2023, the Defendant filed a motion to dismiss count two in the Indictment (ECF No. 33).

## FACTUAL BACKGROUND

For the purposes of providing the Court with context as to the charges in the Indictment, the following facts are based on those alleged in the Statement of Facts filed with the underlying criminal complaint on September 30, 2022 (ECF No. 1), and additional information learned in the course of the investigation.

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building. They assembled to debate and certify the Electoral College certification vote of the 2020 U.S. presidential election, which resulted in Joseph R. Biden amassing more electoral votes than President Donald J. Trump, and thus winning the election.  The Capitol Police had erected barricades around the Capitol to protect the grounds, the building itself, and the people inside doing their jobs.

As the proceedings continued in both the House and the Senate, and with Vice President Michael R. Pence present and presiding over the Senate, a large crowd gathered outside of the Capitol.  Between 1:00 and 2:00 p.m., certain individuals, including the Defendant, forced their way through the barricades and Capitol Police officers, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter the restricted area of the Capitol grounds, remain in the building or grounds and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by Capitol Police officers or other authorized security officials.

With respect to the Defendant, on December 27, 2020, Dunfee, who is a minister, told his congregation, "The Government, the tyrants, the socialists, the Marxists, the progressives, the RINOs, they fear you.  And they should.  Our problem is we haven't given them reason to fear us."  Later, Dunfee stated, "As I said earlier in another previous sermon is this, they used to tell us, you know what, you settle your differences at the ballot.  How did that work out for us?  It's not over.  November the 4th through the 6th, we are heading to D.C. Who's going with us? [Unidentified person: January.]  January 4th through 6th…  Are you ready?"

On January 6, 2021, at approximately 9:23 am, Dunfee stood in a raised flower bed on the East Plaza of the U.S. Capitol grounds.  Dunfee spoke into a bull horn and told the crowd, "This election has been stolen right out from underneath of our noses and it is time for the American people to rise up.  Rise up.  Rise up.  Today is the day in which it is that these elected officials realize that we are no longer playing games…."  Later, Dunfee stated, "We will stand up for our country.  We are standing up for our freedoms.  We are standing up for our president.  And today is the day these elected officials, these senators and these congressmen, understand that we are not going to allow this to continue any longer."  Dunfee continued, "I am not talking about any of the nonsense of burning buildings and destroying another man's property, but they [elected officials] need to fear us."

At approximately 1:14 p.m., Dunfee stood on a low wall outside the barricades on the East side of the U.S. Capitol grounds speaking into a bull horn.  Dunfee told the crowd, "They just objected to Arizona," referring to the certification proceedings underway inside the U.S. Capitol at that time.

Dunfee continued to address the crowd, stating, "Remember this. If they let us down, we are going to our house, [unintelligible] protect the Constitution [unintelligible], people in the house. We are going to our house." Dunfee then stated, "Reinforcements around back. If you are able to move around back, they need some support around back." Dunfee told the crowd, "Donald Trump is leading. President Trump is leading the crowd, [unintelligible] alright, [unintelligible], fight for Trump. Hold the line." The crowd then began to chant, "Fight for Trump."

Dunfee then directly addressed police officers on the East Front barricade line, stating, "Mister police officers, we want you to understand something. We want you to understand something. We want Donald Trump and if Donald Trump is not coming, we are taking our house. We are taking our house."

At approximately 1:44 p.m., Dunfee and others pushed a metal barricade against U.S. Capitol Police officers, who were attempting to hold the line. When the barricade was breached, Dunfee advanced toward the U.S. Capitol Building before turning around and returning behind the barricade.

At approximately 1:52 p.m., Dunfee addressed the crowd with a bull horn again from the front of the barricade on the East Front. Dunfee claimed that he spoke to a U.S. Capitol Police officer and requested permission for the crowd to go to the base of steps of the U.S. Capitol. Dunfee stated, "We don't want violence . . . We don't want destruction and we don't want you going to jail if you don't have to."

At approximately 1:58 p.m., Dunfee and others pushed a metal barricade against U.S. Capitol Police on a second occasion. This time, Dunfee used his back to push against the barricade. The barricade was breached, and U.S. Capitol Police were unable to resecure the line. Dunfee

4

joined a crowd of rioters marching across the area on the East Front beyond the barricade and advanced towards the U.S. Capitol Building with his hands raised.

By approximately 2:07 p.m., Dunfee was positioned at the front of the crowd of rioters at the East Front entrance to the U.S. Capitol Building, also referred to as the Columbus Doors. Dunfee told other rioters to raise their arms as he walked toward a group of U.S. Capitol Police maintaining the line at the East Front doors. Shortly thereafter, Dunfee was sprayed with OC spray by police officers attempting to prevent rioters from breaching the East Front doors. Dunfee walked away from the East Front doors, as other rioters attempted to breach the U.S. Capitol Building.

By approximately 2:47 p.m., Dunfee returned to the East Front doors after that entrance to the U.S. Capitol had been breached. There, other rioters entered and exited the U.S. Capitol building. An unidentified male exited the building and stated, "We did it, we shut 'em all down. We did our job." Dunfee responded, "Hallelujah." Shortly thereafter, Dunfee told the crowd of rioters, "Mission accomplished," referring to the rioters' successful disruption and delay of the certification proceeding, which had been ongoing inside the U.S. Capitol.

As a result of the actions of the Defendant and hundreds of others, Congress was forced to halt its proceedings and evacuate. Vice President Pence was taken by Secret Service to a secure location within the Capitol for his own protection. After the building was secured later that evening, Congress reconvened and completed counting, certifying, and declaring the Electoral College vote result.

Dunfee was arrested on October 5, 2022.

# ARGUMENT

## I. LEGAL STANDARD

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *Id.* Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

## II. COUNT TWO (OBSTRUCTION OF AN OFFICIAL PROCEEDING) SHOULD NOT BE DISMISSED

The Defendant puts forth a litany of reasons why count two should be dismissed. The Defendant's motion was filed after the D.C. Circuit issued its decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), which directly rejected several of his arguments. Likewise, this Court has previously rejected the same arguments in *United States v. William Watson*, 21-cr-0513-RBW (D.D.C. 2022) (Order Denying Motion to Dismiss Obstruction Charge, ECF No. 42).[1]

---

[1] The Defendant's arguments have also been rejected by the majority of judges in this District. *See, e.g., United States v. Fitzsimons*, 21-cr-158, 605 F. Supp. 3d 132 (D.D.C. 2022) (Contreras, J.); *United States v. Bingert*, 21-cr-91, 605 F. Supp. 3d 111 (D.D.C. 2022) (Lamberth, J.); *United States v. Hale-Cusanelli*, 21-cr-37, ECF 82 (D.D.C. May 6, 2022) (McFadden, J.) (motion to dismiss hearing at pp. 4-8); *United States v. McHugh* (*McHugh II*), 21-cr-453, 2022 WL 1302880 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5

### A. Section 1512(c)(2) "encompasses all forms of obstructive conduct"

First, the Defendant argues that to sufficiently allege a violation, count two must allege that Dunfee took some action "with respect to a document, record, or other object." (ECF No. 33 at 3-8) (citing *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022), *rev'd and remanded sub nom. United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023)). The indictment, however, properly states an offense under 18 U.S.C. § 1512(c)(2).

In *Fischer*, the D.C. Circuit addressed a pretrial ruling that Section 1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'" 64 F.4th at 334. Because the indictments in the cases on appeal did not allege that the defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' the district court dismissed the § 1512(c)(2) counts." *Id.* The government appealed and the D.C. Circuit reversed, holding Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335. The court concluded that, "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336 (concluding that this "broad interpretation of the statute—encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the

---

(D.D.C. Feb. 16, 2022) (Bates, J.); *United States v. Grider*, 21-cr-22, 585 F. Supp. 3d 21 (D.D.C. 2022) (Kollar-Kotelly, J.); *United States v. Nordean*, 21-cr-175, 579 F. Supp. 3d 28 (D.D.C. 2021) (Kelly, J.); *United States v. Montgomery*, 21-cr-46, 578 F. Supp. 3d 54 (D.D.C. 2021) (Moss, J.); *United States v. Mostofsky*, 21-cr-138, 579 F. Supp. 3d 9 (D.D.C. 2021) (Boasberg, J.); *United States v. Caldwell*, 21-cr-28, 581 F. Supp. 3d 1 (D.D.C. 2021) (Mehta, J.); *United States v. Sandlin*, 21-cr-88, 575 F. Supp. 3d 16 (D.D.C. 2021) (Friedrich, J.).

'ordinary, contemporary, common meaning' of the provision's text and structure") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). This portion of the opinion was authored by Judge Pan and joined by Judge Walker, and thus constitutes *Fischer*'s binding holding. *Fischer* thus confirms that the indictment in this case is sufficient notwithstanding the fact that it does not allege obstructive acts related to a document, record, or other object. *See Fischer*, 64 F.4th at 332; *see also Puma*, 596 F. Supp. 3d at 106-08 ("In sum, Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ('otherwise') manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records.") (citing *United States v. Caldwell*, 581 F. Supp. 3d 1, 21 (D.D.C. 2021)).

### B. "Official proceeding" includes Congress's certification of the Electoral College vote

Second, the Defendant argues that Congress's constitutionally mandated process of counting the electoral college votes of the presidential election and certifying the next President and Vice President of the United States does not constitute an "official proceeding." (ECF No. 33 at 9-13). Instead, the Defendant claims, the term "official proceeding" narrowly includes those proceedings that are "tribunal-like" in nature. *Id*. Again, both the D.C. Circuit and this Court have rejected this argument.

"The statutory definition of 'official proceeding' under § 1512(c)(2)," the D.C. Circuit has held, "includes a 'proceeding before the Congress.'" *Fischer*, 64 F.4th at 342-43 (quoting 18 U.S.C. § 1515(a)(1)(B)). "Although appellees strain to argue that the Electoral College vote certification is not a 'proceeding before the Congress' because it does not involve 'investigations and evidence,' we see no such limit in the ordinary meaning of the word 'proceeding.'" *Id*. (citing

8

*Proceeding*, Oxford English Dictionary (2d ed. 1989) ("[T]he carrying on of an action or series of actions.")). "Notably," the Circuit continued, "Congress follows statutory directives to complete the certification of the Electoral College vote, including: (1) convening a joint session at 1:00 P.M. on January 6 in the year following the presidential election; (2) appointing four tellers to read and list the votes; (3) announcement of the voting results by the President of the Senate; and (4) allowing written objections from members of Congress, subject to a procedure for submitting and resolving such objections. Those directives reflect Congress's own intent that the vote certification shall be a 'proceeding before the Congress.'" *Id*. at 343 (citations omitted). As such, this Court should refuse to adopt the Defendant's definition of "official proceeding" that is "inapt when interpreting the meaning of a 'proceeding *before the Congress*.'" *Id*. (quoting 18 U.S.C. § 1515(a)(1)(B)); *see also Puma*, 596 F. Supp. 3d at 97-102 ("The Court concludes that Congress' activities on January 6, 2021, clearly constitute a formal assembly akin to a hearing and thus fall within this definition of an 'official proceeding' before 'the Congress.'").

### C. "Corruptly" is not unconstitutionally vague

Third, the Defendant argues that the term "corruptly," as used in Section 1512(c), is unconstitutionally vague, rendering the statute constitutionally invalid. (ECF No. 33 at 13-19). As an initial matter, this argument is irrelevant at this stage because count two is properly pled. Recognizing that the court had not agreed upon a definition of "corruptly," Judge Walker in *Fischer* explained that the indictments in that case nonetheless "should be upheld" because "[e]ach contains 'the essential facts constituting the offense charged.' That's because they allege that the Defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote.'"

9

*Fischer*, 64 F.4th at 361 (Walker, J., concurring) (quoting Fed. R. Crim. P. 7(c)(1)).  So too here: the indictment sufficiently alleges that the Defendant acted corruptly, and the Court should leave the exact definition of that term for another day, when the issue is properly before the Court.  *See United States v. Munchel*, No. 1:21-CR-118-RCL, 2023 WL 2992689, at *5 (D.D.C. Apr. 18, 2023) ("First, the 'corruptly' language in the statute is not undefined, vague, or limited to situations where a defendant personally benefited.  While the lead opinion and concurring opinion in *Fischer* were at odds regarding the precise bounds of the corrupt mens rea, both agreed that . . . an indictment alleging a corrupt mens rea in the same manner as the one in this case survives a motion to dismiss.") (citing *Fischer*, 64 F. 4th 329).

In any event, the term "corruptly" is not unconstitutionally vague.  The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law."  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  Notably, the void for vagueness doctrine is narrow.  The challenger must overcome a strong presumption that duly enacted statutes are constitutional.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

10

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam). Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). Indeed, district courts here have recognized a high bar for rendering a statute unconstitutionally vague and has advised:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask. Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40-BAH, 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citation and quotation omitted); *see also United States v. Harmon*, No. 19-cr-395-BAH, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 void-for-vagueness motion). In sum, as this Court has held, "[a] statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere. . . . Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct . . . at all." *Puma*, 576 F. Supp. 3d at 103 (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).

Although the D.C. Circuit did not resolve the meaning of the term "corruptly" in *Fischer*, both judges who joined the lead opinion determined that term is not unconstitutionally vague as

11

used in Section 1512(c). *See Fischer*, 64 F.4th at 339-42 (Pan, J.) (explaining that, under any formulation, "'corrupt' intent exists at least when an obstructive action is independently unlawful," and that "appellees err in arguing that the term 'corruptly' 'takes on unconstitutional vagueness' in circumstances outside the context of a judicial proceeding"); *id.* at 352 (Walker, J.) (explaining that his interpretation of "corruptly" "avoids vagueness").

In *Puma*, Judge Friedman agreed with the above analysis. "The text of Section 1512(c), and the inclusion of the term 'corruptly,'" Judge Friedman concluded, "'gives fair notice of the conduct it punishes' and does not invite 'arbitrary enforcement.'" *Puma*, 576 F. Supp. 3d at 103 (quoting *Johnson*, 576 U.S. at 596). Further, as Judge Friedman recently observed, "[j]udges in this district have construed 'corruptly' to require 'a showing of dishonesty' or an 'improper purpose'[;] 'consciousness of wrongdoing'[;] or conduct that is 'independently criminal,' 'inherently malign, and committed with the intent to obstruct an official proceeding.'" *Id*. (quoting *Montgomery*, 578 F. Supp. 3d at 81; *Bozell*, 2022 WL 474144, at *6; *Caldwell*, 581 F. Supp. 3d at 19-20; and *Sandlin*, 575 F. Supp. 3d at 33) (alterations omitted).[2] "These constructions," Judge Friedman concluded, "support a consensus that Section 1512(c) clearly punishes those who endeavor to obstruct an official proceeding by acting with a corrupt purpose, or by independently corrupt means, or both." *Id*. (cleaned up). Under any of these common-sense constructions, the

---

[2] Indeed, upon information and belief, every court in the January 6 context, aside from Judge Nichols, has promulgated jury instructions that has adopted some form of this language, often adding that the defendant must use unlawful means or act with an unlawful purpose. *See, e.g.*, *United States v. Sara Carpenter*, 21-cr-305-JEB (ECF 95); *United States v. Thomas Robertson*, 21-cr-34-CRC (ECF 86); *United States v. Dustin Thompson*, 21-cr-161-RBW (ECF 83); *United States v. Anthony Williams*, 21-cr-377-BAH (ECF 112); *United States v. Alexander Sheppard*, 21-cr-203-JDB (final instructions not available on ECF); *United States v. Elmer Rhodes, et al*, 22-cr-15-APM (ECF 396); *United States v. Doug Jensen*, 21-cr-6-TJK (ECF 97).

term "corruptly" "not only clearly identifies the conduct it punishes; it also 'acts to shield those who engage in lawful, innocent conduct—even when done with the intent to obstruct, impede, or influence the official proceeding.'" *Id.* (quoting *Sandlin*, 575 F. Supp. 3d at 33). It presents no vagueness concern.

### D. The rule of lenity does not apply

Finally, the D.C. Circuit has rejected the Defendant's rule of lenity argument, (ECF No. 33 at 19-20). The Defendant submits that it is unfair to prosecute them for obstruction of an official proceeding because he was not on fair notice that Congress's Joint Session on January 6 constituted an "official proceeding" under Section 1512(c)(2). The rule of lenity, however, applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Fischer*, 64 F.4th at 350 (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (1994)). In addressing the same argument from another January 6 defendant, the Circuit concluded, "the language of § 1512(c)(2) is clear and unambiguous. Restraint and lenity therefore have no place in our analysis." *Id*.

## III. CONCLUSION

The government respectfully submits that the Court should not dismiss count two in the Indictment.

        Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar Number 481052

By:    */s/   Will Widman*
        Will N. Widman
        U.S. Department of Justice -CRM
        1301 New York Avenue, N.W.
        Washington, D.C. 20530
        Will.Widman@usdoj.gov
        (202) 353-8611