## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**                                     **Case No. 1:23-CR-0036 (RBW)**

**WILLIAM ROBERT DUNFEE**

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO
## PRECLUDE IMPROPER DEFENSE ARGUMENTS

The United States moved to preclude improper defense arguments, specifically appeals to

the First Amendment; reliance on charging decisions; use of the entrapment by estoppel or public

authority defenses; and references to the use of federal resources, the volume and timing of

discovery, Defendant's claimed good character, and Defendant's ignorance of the law. ECF No. 49

("Gov't Mot.").  Defendant opposes this motion primarily because the government raises these

issues in a motion *in limine* as opposed to at trial.  ECF No. 53 ("Def. Opp'n.").  Although

Defendant represents that this is a firm rule, he relies on a select number of cases from outside the

relevant district that are not dispositive.  In response to the government's substantive arguments,

Defendant relies primarily on hyperbole and inaccurate appeals to the Due Process Clause.

His arguments should not be credited.

### A. Motions *in Limine* are Appropriately Decided in This Case

Motions *in limine* are properly considered for narrowing evidentiary issues and trial

efficiency, generally.  Defendant argues that both of the government's motions *in limine* should

be denied without consideration because motions *in limine* "serve no real purpose in a bench trial."

(Def's Opp'n at 1.)  There is no such inflexible rule.  Motions *in limine* may, in some

circumstances, be less useful.  For example, when the offering party moves to preclude evidence

as unduly prejudicial under Fed R. Evid. 403, a motion *in limine* may not be beneficial because

1

the Court is the fact finder and gatekeeper in a bench trial.  *See United States ex rel. Morsell v. NortonLifeLock, Inc.*, 567 F. Supp. 3d 248, 258 (D.D.C. 2021) (discussing how claims of undue prejudice under Fed. R. Evid. 403 are highly limited in bench trials).  But this line of cases does not stand for the proposition that there is no place for any motion *in limine* in a bench trial.

Motions *in limine* are often proper when considering whether evidence is relevant, unnecessarily duplicative, or would waste time, even at a bench trial.  *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010) ("Motions *in limine* are designed to narrow the evidentiary issues at trial"); *NortonLifeLock, Inc.*, 567 F. Supp. at 258 (discussing in the context of a bench trial evaluating pretrial evidence under Fed. R. Evid. 401 and 402); *Estate of Rick v. Stevens*, 2002 WL 1713301, at *2 (N.D. Iowa July 2, 2002) ("there are trial management benefits to a motion *in limine* that, in this court's view, are equally applicable to a bench or jury trial"); *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983) (suggesting that the primary purpose of an *in limine* ruling is to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues), *aff'd*, 469 U.S. 38 (1984).  Obviously, pretrial rulings that particular evidence or arguments are admissible or will not be considered would allow the parties to shape the presentation of evidence and prepare their witnesses for testimony regarding particular issues.  Courts in this district routinely consider motions *in limine* prior to bench trials, including in trials related to the attack on the Capitol on January 6, 2021.  *See, e.g.*, *United States v. Warnagiris*, 21-cr-382-PLF, 2023 WL 6973213 (D.D.C. October 23, 2023) (granting government's motion *in limine* to preclude defendant from offering evidence on the specific locations of security cameras in the U.S. Capitol and operational specifics about Secret Service protective details prior to a bench trial); *United States v. Harris,* 21-cr-274-RDM, Minute Order (D.D.C. December 21, 2022) (granting government's motions *in limine* to preclude certain questioning on cross-examination of

Secret Service witness and regarding Capitol Police surveillance camera locations, and precluding arguments and evidence about alleged law enforcement inaction, preceding a bench trial) (guilty plea later entered); *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 06-cv-2046-RBW, 2010 WL 11586786 (D.D.C. November 22, 2010) (Walton, J).  It is therefore appropriate, even for a bench trial, to decide motions *in limine* to focus the scope of evidence, promote efficiency, and prevent the disclosure of sensitive information of limited, if any, relevance.

### B.  First Amendment

Defendant should be prevented from arguing that the First Amendment does not allow his statements to come in as evidence, and he cannot use the First Amendment as a defense to any of the crimes he is alleged to have committed.   Defendant does not directly respond to the government's motion, but instead, reframes the motion and conflates all issues related to admitting his spoken statements.   Defendant incorrectly asserts that the United States' motion seeks to blanket admit any and all of his statements, and to prevent him from making arguments that his speech is not relevant. (Def Opp'n at 5 ("Having sought to have this Court grant it carte blanche authority to use all of Mr. DUNFEE's core political speech against him as a sword at trial, the Government, shockingly, seeks, in turn, to be shielded or protected from any evidence or argument that challenges the effort of the Government to use such speech against Mr. DUNFEE.")

The United States' motion is narrower than Defendant presents.   First, the motion requests that Defendant's statements be admitted over objections that they are protected by the First Amendment and, therefore, inadmissible.   This does not mean that the admission of statements is not subject to the Federal Rules of Evidence, such as Rule 401.   However, Defendant's statements should not be precluded simply because they are speech.   Defendant does not seem to take issue with that, stating: "Mr. DUNFEE acknowledges that current caselaw allows, as a general

proposition, the Government to use evidence of a defendant's speech . . . ." (Def Opp'n at 3.) However, Defendant conflates the issue of determining whether speech is inadmissible on First Amendment grounds with the issue of whether speech is inadmissible for other reasons, such as relevance.  Defendant's single citation on this point, *Dawson v. Delaware*, 503 U.S. 159, 165 (1992), supports the government's position.  In *Dawson*, the Court held that "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.*  It is of a piece with *Wisconsin v. Mitchell*: the First Amendment does not bar the admission of relevant evidence simply because that evidence is political speech. 508 U.S. 476 (1993).[1]

Second, the Government requests that Defendant be prevented from arguing that the First Amendment is a defense to his conduct.  If the Government establishes the elements of the offenses with which Defendant is charged, the First Amendment provides no defense, even if evidence of Defendant's crimes are intertwined with political discussion and rhetoric.  (Gov't Mot. at 4 (citing *United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012)).)  To begin with, most (if not all) of Defendant's conduct is not protected by the First Amendment.  The First Amendment does not permit a defendant to obstruct a Congressional proceeding, topple police barricades, or trespass into a restricted area. *See United States v. Nordean*, 579 F. Supp. 3d 28, 54 (D.D.C. 2021).  The same is true of Defendant's speech that formed part of his conduct aiding and abetting obstruction of the certification.  It is well-established law that the First Amendment does not protect speech that otherwise constitutes a crime.  As the D.C. Circuit recently noted, "speech that falls within the traditional bounds of aiding-and-abetting liability [] is not a form of speech

---

[1] Defendant cites *United States v. Mills* for a different proposition; however, it is worth noting that that case further supports the government's position, as the court rejected a First Amendment challenge to the admissibility of rap lyrics.  367 F. Supp. 3d 664, 667-671 (E.D. Mich. 2019).

protected by the First Amendment." *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1299 (D.C. Cir. 2023) (citing cases including *United States v. Stevens*, 559 U.S. 460, 468 (2010) (First Amendment allows restrictions on the content of "speech integral to criminal conduct") (citations omitted), *National Org. for Women v. Operation Rescue*, 37 F.3d 646, 656 (D.C. Cir. 1994) ("That 'aiding and abetting' of an illegal act may be carried out through speech is no bar to its illegality."); *see also, e.g.*, *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 242–43 (4th Cir. 1997) (noting "long-established caselaw provides that speech—even speech by the press—that constitutes criminal aiding and abetting does not enjoy the protection of the First Amendment").

Defendant's case law does not stand for something different.  In *United States v. Freeman*, for instance, the court specifically rejected defendant's argument that "nothing more than advocat[ing] tax noncompliance as an abstract idea" barred his prosecution under the First Amendment.  761 F.2d 549, 551 (9th Cir.1985).  The court also found that "where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone."  *Id.* at 552; *see also Watts v. United States*, 394 U.S. 705, 708 (1969) (not addressing a First Amendment defense but finding that the government needed to "prove a true 'threat'"); *United States v. Santilli*, 16–cr–462017, 2017 WL 347590, at *8 (D. Nev. January 6, 2017) (true threats are not protected under the First Amendment); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.")[2]

---

[2] Defendant's only other citation, *Nat't Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 263 (1994) (Souter, J. concurrence), is irrelevant.  In addition to being a concurrence signed by only two justices, the concurrence simply dealt with the question "why the First Amendment does not

Defendant incorrectly argues that the government seeks "to be shielded or protected from any evidence that challenges the effort of the Government to use such speech against Mr. DUNFEE." (Def. Opp'n at 5.)  That is incorrect.  Defendant is free to argue how his words do not go to his intent to commit certain crimes, or perhaps why his speech does not constitute aiding and abetting.  However, that is different than using the First Amendment to shield criminal behavior.  If the Court finds Defendant's speech evinces criminal intent, or constitutes the crime of aiding and abetting, the First Amendment provides no defense.

### C.  Charging Decisions

Defendant appears to concede that references to the government's charging decisions in other cases – *i.e.*, a selective prosecution argument – will have no place at his trial.  He agrees that his arguments at trial are properly limited to his own case.  *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) (noting that a "selective-prosecution claim is not a defense on the merits to the criminal charge").

### D.  Entrapment or Public Authority Defense

After the Government's motion *in limine* was filed, Defendant entered a notice of public authority defense.  *See* ECF No. 51.

"A defendant 'will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites.'"  *United States v. Navarro*, 22-cr-200-APM, 2023 WL 371968, at *15 (D.D.C. Jan. 19, 2023) (quoting *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015)).  Here, Defendant cannot meet the evidentiary prerequisites required to bring a public authority defense (or the closely related entrapment by estoppel defense).

---

require reading an economic-motive requirement into the Racketeer Influenced and Corrupt Organizations Act . . . and to stress that the Court's opinion does not bar First Amendment challenges to RICO's application in particular cases."  *Id.*  This is inapplicable to this case.

*See United States v. Eicher*, 22-cr-38-BAH, 2023 WL 3619417, at *2 (D.D.C. May 23, 2023) (precluding public-authority defense and noting that "ultimately, defendants must prove these affirmative defenses by a preponderance of the evidence, but to first merit a jury instruction regarding these theories at all, defendants must offer sufficient evidence to support their invocation") (citation omitted)).

The public authority and entrapment by estoppel defenses are complete defenses to criminal liability and, as such, invocation requires defendants to meet "a high bar." *United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021). The public authority defense applies only to a "defendant who knows the conduct he has been authorized to commit is illegal," but believes he is acting as an agent of a government official who possessed actual authority to order his conduct. *Alvarado*, 808 F.3d at 485.

The public authority defense is plainly inapplicable here. First, Defendant does not concede that he committed any illegal acts (a prerequisite to arguing that he did something illegal at law enforcement's behest).[3] Second, Defendant does not, and cannot, claim Officer A.W. ordered him to push against barricades or to obstruct the official proceeding.[4]

---

[3] Notably, however, because Defendant has filed the notice of public authority defense, the government is permitted to use that purported defense to show that Defendant knew his acts were illegal. *See Eicher*, 2023 WL 3619417, at *7 ("evidence that defendant sought to justify her actions by reference to the former President's statements would be admissible against her at trial to prove what defendant intended by her conduct on January 6, pursuant to FED. R. CRIM. P. 12.3(e), unless defendant withdraws her Notice of Public Authority, *id*. That matters where, as here, defendant's attempted defense is best understood as a public authority defense because she 'engage[d] in conduct that the defendant [knew] to be otherwise illegal.'") (internal citation omitted).

[4] Any public authority defense would fail for the additional reason that Officer A.W. lacked actual authority to interfere with officers or obstruct Congress himself. "The validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *United States v. Burrows*, 36 F.3d 875, 881-82

Defendant's defense, if at all, sounds in entrapment by estoppel. The entrapment by estoppel defense applies only if the defendant was "actively misled . . . about the state of the law defining the offense," and relied on that misleading advice. *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018).

Defendant cannot make out this defense either. "To prove an entrapment-by-estoppel defense, a defendant must show '(1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.'" *Chrestman*, 525 F. Supp. 3d at 31 (quoting *Cox*, 906 F.3d at 1191); *accord United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The entrapment by estoppel defense applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official." (internal quotations omitted)).

Defendant's defense fails in many respects. He cannot meet the first requirement because he cannot "show that a government official affirmatively communicated to the defendant the official's approval of the conduct at issue." *See Eicher*, 2023 WL 3619417, at *3 (citing *Alvarado*, 808 F.3d at 485); *see also United States v. Sheppard*, No. 21-cr-203 (JDB), 2022 WL 17978837,

---

(9th Cir. 1994), quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368, n.18 (11th Cir. 1994). While Defendant does not explain precisely what conduct the officer in question directed him to engage in, an individual police officer does not have the authority to direct Defendant to engage in a civil disorder (18 U.S.C. §231(a)), obstruct an official proceeding (18 U.S.C. §1512(c)), change the restricted area (18 U.S.C. §1752(a)(1), (a)(2)), or engage in physical violence on the Capitol grounds (40 U.S.C. 5104(e)(2)(F)). For this reason alone, the public authority defense should be rejected.

at *9 (D.D.C. Dec. 28, 2022).  Without any specificity, Defendant repeats the assertion in his notice

of public authority defense, stating, "[Defendant] was directed to engage in some of the conduct

set forth in the indictment by U.S. Capitol Police Officer [A.W.]"  (Def. Opp'n at 7.)  Defendant

does not allege any statements made by Officer A.W. to Defendant supposedly granting Defendant

authority to break the law, nor does Defendant identify which of the laws he thought he was

permitted to break.[5]

Meyers v. City of New York is analogous.  No. 1:14-CV-09142 (ALC), 2019 WL 1397186

(S.D.N.Y. Mar. 28, 2019), aff'd, 812 F. App'x 11 (2d Cir. 2020).  There, protesters were arrested

for erecting tents in Zuccotti Park and refusing to leave following a dispersal order from the police.

Id. at *1.  The protesters argued an entrapment-by-estoppel defense because, prior to the dispersal

order, then-Mayor Michael Bloomberg had stated that "as long as the protestors obey the laws,

we'll allow them to express themselves."  Id. (cleaned up).  Even if that statement implied that the

mayor would choose not to arrest the protestors for demonstrating in the park, "it 'did not advise

[the protestors] that the behavior for which they were [prosecuted] was lawful.'"  United States v.

Grider, No. 21-cr-022-CKK, 2022 WL 3030974, at *3 (D.D.C. Aug. 1, 2022) (quoting and

describing Meyers, 2019 WL 1397186, at *17).  Likewise, Defendant has not identified any claim

by Officer A.W. communicating that Defendant was permitted to breach barricades, interfere with

police (in other words, violate the civil disorder statute), or obstruct the Congressional proceeding.

As in Meyers, Defendant's claim on January 6 that Officer A.W. said he would check with his

---

[5] The United States anticipates evidence at trial may show that Defendant that claimed that Officer A.W. told Defendant that he would talk with his supervisor and "see what he could do" about Defendant and others being permitted to protest at the base of the Capitol steps.  In his opposition, Defendant does not argue that any such permission was ever actually given to Defendant by Officer A.W.  Further, Defendant does not allege in his opposition (nor will the evidence show he was ever told) that Defendant was allowed to push against the barricades, violently breach the restricted perimeter, or obstruct the official proceeding.

supervisor about whether the hostile crowd could move forward "did not advise [the protestors] that the behavior for which they were [prosecuted] was lawful." *Id.*   "These cases underscore that the public authority and entrapment-by-estoppel defenses are available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful." *Sheppard*, 2022 WL 17978837, at *9.

Defendant also cannot fulfill the second requirement for an entrapment by estoppel defense because Officer A.W. was not empowered to abrogate each of the criminal laws which Defendant violated.   "The logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." *United States v. Baez*, No. 21-cr-0507-PLF, 2023 WL 6364648, at *8 (D.D.C. Sept. 29, 2023) (citation omitted).   While the purported actions of Capitol Police officers may be relevant to Defendant's state of mind, he cannot argue that these actions actually made his conduct legal.   *See id.; see also Eicher,* 2023 WL 3619417, at *4 (these defenses are not available "where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority" (citing *Chrestman*, 525 F. Supp. 3d at 32 (quoting *Cox*, 379 U.S. at 569)).)

Finally, Defendant fails to explain how his reliance was both actual and reasonable, failing the last two prongs of the test.   "[A] defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere." *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994); *see also United States v. Fulcher*, 250 F.3d 244, 254 (4th Cir. 2001); *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011).   This reasonableness requirement is necessary to ensure the "uniform enforcement of law"; otherwise, anyone could interpret a public official's actions or statements as authorizing them to engage in

criminal conduct. *Burrows*, 36 F.3d at 882 (quoting *United States v. Lansing*, 424 F.2d 225 (9th Cir. 1970)).  Defendant's argument appears to be that after hours of standing outside the restricted perimeter reinforced by a line of police officers dressed in uniform and riot gear, Officer A.W. told Defendant something about the restricted perimeter, which suddenly gave Defendant the authority to enter the area.[6]  What makes this argument more incredible is that in order to get into the restricted area, Defendant had to push the barricades *against officers, including Officer A.W., who allegedly gave Defendant the authority to enter the restricted area*.  If a person actually believed that he or she had the authority to enter a restricted area, he or she would not use force to get into that area, especially by using force against the individual who allegedly gave them the authority to enter.  In that case, it is either not reasonable for a person to believe they received the authority in the first place, or such a belief is insincere.  Therefore, Defendant's defense will also fail the reliance prongs of the test.  Thus, unless Defendant can meet the evidentiary prerequisites for an entrapment by estoppel or public authority defense—and he cannot—the Court should preclude him from making such arguments.  Again, however, and as in *Eicher,* he may attempt to present evidence and argument to demonstrate that he lacked the requisite *mens rea* for any of the charged crimes.  *See Eicher,* 2023 WL 3619417, at *8.

### E.  Irrelevant Evidence

Defendant does not appear to take issue with the government's characterization that arguments about his good character, the volume of discovery, his ignorance of the law, and the

---

[6] Although not necessary for the purposes of this motion, the government anticipates evidence will show that Defendant did not sincerely believe that Officer A.W. had authority to do anything. For instance, video evidence shows Defendant in agreement with others in the crowd that one officer, Officer A.W., had no power to allow the mob into the restricted area.  Also, prior to what the government believes may be the interaction between Defendant and Officer A.W. that Defendant intends to rely on for his defense, Defendant tells another police officer that the crowd will "push if we got to push" with regards to metal fencing demarcating the restricted area.

like are indeed irrelevant under Fed R. Evid. 401.  He argues only that a decision to preclude them should not be made prior to trial.  For reasons discussed above, that is wrong; a ruling will create clear expectations that will shape the parties' preparation and avoid wasting time at trial.

WHEREFORE, for the reasons set out in the Government's Motion and herein, the Government asks the Court to grant the Government's motion *in limine* to preclude improper defenses.

Dated: December 1, 2023.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:        */s/Will N. Widman*
WILL N. WIDMAN
U.S. Department of Justice -CRM
NC Bar No. 48158
1301 New York Avenue, N.W.
Washington, D.C. 20530
Will.Widman@usdoj.gov
(202) 353-8611

KATHRYN E. BOLAS
Assistant U.S. Attorney
Capitol Siege Section
NY Bar No. 5704234
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
Kathryn.Bolas@usdoj.gov
(202) 252-0872