**IN THE UNITED STATE DISTRICT COURT
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **CASE NO. 1:23-cr-00036-RBW** |
| | : | |
| **vs.** | : | **JUDGE WALTON** |
| | : | |
| **WILLIAM DUNFEE** | : | <u>**SENTENCING MEMORANDUM**</u> |
| | : | |
| **Defendant** | : | |

Defendant William Dunfee, through his Attorneys, Thomas W. Kidd, Jr. and Curt C. Hartman, hereby tenders this Sentencing Memorandum.

## I. INTRODUCTION

William Dunfee is a good man, who had a lapse of judgment on January 6, 2021. The cause of that lapse has been collectively debated in our nation, but in the end, Mr. Dunfee knows that his decisions that day were his and his alone, and went far beyond merely exercising First Amendment rights into committing illegal actions.

Mr. Dunfee has served as a pastor of his church for many years. In addition to his service to his church and its congregation, Mr. Dunfee's services have extended into his local community, as well as communities far from his home. In the end, he has led his life as a servant-leader.

Many letters in support of Mr. Dunfee are being tendered with this Sentencing Memorandum, but a few relevant quotes are particularly descriptive. For example, Emily Hosteller shares:

[f]or many years Bill has been well known for being a highly dependable member of our community. As a young woman I was with him on one of the many occasions when he organized a group of people take food to local homeless villages. He did not stay behind and simply send us but rather participated on Christmas Eve. This spring tornadoes decimated homes in Indian Lake, Ohio which is a couple of hours from where we live. Like in numerous situations over the years, Bill again rose to the occasion and encouraged our local community members to use their tools, talents and abilities to start rebuilding and that they did. Over multiple trips to Indian Lake our local men and women cleared debris and began repairing and rebuilding homes that were destroyed. Legal fees are of course not cheap and this case has been a long expensive process. Bill certainly could have charged thousands of dollars for the labor. It may surprise you but it didn't surprise me that he refused all money from the people who he helped because that is the kind of human being he is.

Lori Davis describes Mr. Dunfee as:

leading and serving alongside his church to prepare and deliver hot meals on holidays to those in need. A Back-To-school program that has grown tremendously; this program gives free lunch, free fully stocked backpacks according to specific grade levels. He has Barbers/Beauticians on site, willing to give free haircuts. The kids and families get to hear about Jesus and feel so loved and special as they get their needs met that day. Bill and his volunteers travel across the USA to bring their construction expertise and personal items, food, water etc. to those who have found themselves in despair from disaster of various forms.

Muskingum County Sheriff Police Sergeant Brodie Brewer shares the decided impact and help Mr. Dunfee provided in allowing him to pursue his chosen career:

I decided that I would like to pursue a career in Law Enforcement. I began my degree in criminal justice and followed with the Ohio Peace Officer Training Academy. At this time in life, I was a young father with little money to my name and a dream to be a cop. I knew Bill operated Cross Improvements (now Cross Builders), a construction company.... Knowing the willingness to help from the Dunfee's and Davis family, I decided to ask for a job. I needed a job that was flexible enough to get through the Police Academy and pay the bills. [Mr. Dunfee] [and others] didn't think twice about my request for a

> job.  [Mr. Dunfee] was willing to help me.  [Mr. Dunfee] was also very vocal about his pride in me for becoming a police officer.  I later finished the Police Academy, quit my job in construction, and pursued my career in law enforcement.

Finally, Hunter Hamilton expresses Mr. Dunfee's deep compassion for those less fortunate and facing various challenges in life:

> I had only known Mr. Dunfee personally for a few years when he invited me to join himself and a group of others on a mission trip to provide aid to communities in Texas following the devastating Hurricane Harvey.  Mr. Dunfee organized and coordinated the trip, provided the equipment and contacted sources in Texas to identify those with the greatest needs.  This is just one of many examples of deep care and compassion that Mr. Dunfee has displayed throughout my time knowing him on a personal level.  Furthermore, I was also employed under Mr. Dunfee at his construction business throughout my high school career.  During this time, I watched Mr. Dunfee provide job opportunities to multiple homeless individuals, even going far out of his way to work to pick up one man who was in need of a job.  He gave this same man warm clothes and bought his lunches while he worked, not because the business needed more laborers, but just because this individual needed a helping hand while living in homelessness.

While these are just a sampling of the letters tendered, these speak deeply to the fact that Mr. Dunfee is not a selfish individual, but one who focused outward looking always to serve others, not himself.  He truly lives the Christian admonition to love his neighbor seriously and lives a life of servanthood with vigor.

In addition, Mr. Dunfee is also not a young man.  He will be 60-years old this coming February and he faces significant health issues.  At a medical visit earlier this year, progress notes stated that "patient has significant cardiac history.  Unexplained syncope and collapse noted last year.  He underwent heart

cath in April 2023 without any abnormal findings, no stents.  He had a dual pacemaker put in 6/8/2023 due to unexplainable V. tach."

When considering these and other factors of Mr. Dunfee's offenses, his age, deep service to the community, close family ties and responsibilities, and lack of criminal history, it is appropriate and respectfully requested that this Court impose a sentence of twelve (12) months house arrest, 5 years of supervised release, and 200 hours of community service.

Such a sentence is one that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing as required by 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552, U.S. 85, 101 (2007).  Additionally, this sentence satisfies the statutory goals of sentencing and constitutes a sentence that reasonably provides just punishment, protects the public, promotes respect for the law, affords adequate deterrence, and promotes rehabilitation as required by 18 U.S.C. § 3553(a)(2).

This memorandum addresses:

(1) guideline related issues;

(2) factors set out in 18 U.S.C. § 3553(a), which the Court must consider in determining the sentence to impose;

(3) why a sentence of more than home confinement would be excessive and result in unwarranted disparity.

## A. Procedural History

Pursuant to a stipulated bench trial this Court found Mr. Dunfee guilty of three counts.  *See Order* (Doc. No. 66.)  In advance of and as part of the stipulated

bench trial, Mr. Dunfee "knowingly and voluntarily admit[ted] to all the elements" with respect to the charges for Count One (18 U.S.C. § 231(a)(3)(civil disorder)) and Count Three (18 U.S.C. § 1752 (a)(1)(entering and remaining in a restricted building or grounds)). *See Stipulations* (Doc. No. 61-1) ¶¶55 & 59. The sole issue leading to the stipulated bench trial, and not a plea prior thereto, concerned Count Two which alleged a violation of 18 U.S.C. § 1512(c)(2)(obstructing an official proceeding). At the conclusion of the stipulated bench trial, the Court found Mr. Dunfee guilty on all three charges. However, in light of the Supreme Court's recent decision in *Fischer,* this Court subsequently entered a *sua sponte* order vacating the conviction for Count Two and dismissing that count of the Indictment*. See Order* (Doc. No. 76). Thus, Mr. Dunfee is presently before the Court for sentencing on the two counts to which he readily admitted culpability.

### B. Sentencing Under the Guidelines

#### 1. Base Offense Level

The guideline for 18 USC § 231(a)(3) offenses is found in USSG §2A2.4(a). That section provides a base offense level of 14. That level is not in dispute.

#### 2. Specific Offense Characteristic

Mr. Dunfee has no objection to the application of the specific offense characteristic applied in USSG §2A2.4(b)(1)(A) for the offense involving physical contact.

### 3. Role in the Offense

The government seeks a 4-point adjustment for Mr. Dunfee's role in the offense under USSG §3B1.1. As acknowledged by probation in the Final PSR:

> [i]t is the burden of the government to prove that the defendant was 'an organizer or leader' of the criminal activity. USSG §3B1.1, comment.(n.4) notes the factors that the Court should consider in determining an aggravated role adjustment. One of the factors is the "degree of control and authority exercised over others." The commentary goes on to note that "[t]his adjustment does not apply to a defendant who merely suggests committing the offense." The Probation Office does not consider the defendant to be "an organizer or leader" in the criminal activity.

*See Final PSR* (Doc. No. 77), *at 29.* Mr. Dunfee concurs with this statement.

### 4. Acceptance of Responsibility

As stated in *Final PSR* (Doc. No. 77) *¶60*, counsel fully advised Mr. Dunfee that he should not plead guilty to Count Two – 18 USC 1512(c) – due to the statute not being applicable to his conduct. In proceeding to the stipulated bench, the issue of the scope of 18 USC 1512(c) was still being litigated in other cases with different decisions issued from various judges of this Court, and a panel of the D.C. Circuit issuing a fracture decision with three different assessments on the issue. Thus, the legal community generally expected the that Supreme Court would ultimately be called to resolve the issue. And, in fact, the Supreme Court agreed to consider such issue when it granted certiorari in the *Fischer* case. And that was the procedural posture of litigation concerning 18 USC 1512(c) when this Court held a hearing with counsel and the parties on December 14, 2023. *See Order* (Doc. No. 59.)

At the hearing on December 14, 2023 – the day immediately after the Supreme Court granted certiorari in *Fischer* – the Court considered whether to stay the trial then scheduled for January.  In addressing whether, without a stay of the trial, Mr. Dunfee would suffer irreparable harm in not being granted acceptance of responsibility, the following exchange with the Court confirms Mr. Dunfee acknowledged and accepted responsibility for Count One and Count Three, with the sole issue relating to Count Two, *i.e.*, the now dismissed 18 USC 1512 offense:

> Mr. KIDD (counsel for Mr. Dunfee):  …  Because we go forward with the trial, he is not getting acceptance of responsibility when he has agreed to plead to – he has offered to plead to the other – in plea negotiations to the other felony.
>
> THE COURT:  If, in fact, he went to trial and if theoretically he was convicted of the statute and the Supreme Court subsequently concludes it is construed too broadly by the Circuit and, therefore, the conviction on those charges cannot stand, then I think my inclination, I am sure it would be to say, well, if he desired to resolve this matter and the only reason he didn't resolve it was because of the dispute the parties had regarding this statute, I think I would probably be inclined to say he would be entitled to the consideration just like somebody who pled.
>
> I mean, there is case authority that I think deals with the issue that says that under circumstances where somebody wants to resolve their case, but they can't resolve it, but subsequently there is a change in the law that it is appropriate to give them the credit that otherwise they would have gotten if they had copped – resolved their case by way of a plea.
>
> MR. KIDD:  I appreciate that.  And we would appreciate if the Court did take that position.  Our concern is when probation does the PSI, PSR, the fact that he didn't plead out to the 231, to the underlying misdemeanors, that they would still say -
>
> THE COURT:   I have the greatest respect for our probation department, but they don't dictate to me –
>
> …

THE COURT:  Again, I think I would take the same position if he had a good faith basis for not proceeding with a disposition, because, you know, he believed that the law was inconsistent with the government's position and that is why he didn't resolve the matter and then subsequently even if the Supreme Court were to rule inconsistent with his position since he acted in good faith in not going forward with a plea, I think I would – again, I wouldn't penalize him.  I don't penalize anybody for going to trial anyhow.

MR. KIDD:  Sure.

THE COURT:  The question is whether they get a discount for having entered a plea.  I might under those circumstances be inclined to give him consideration in light of the fact that he wanted to plead, but did not and had a good faith reason not to, because he thought the law was inconsistent with the government's position.

*Transcript* (Doc. No. 60), at 37-39.

The precise scenario this Court posited during this colloquy came to fruition: (i) Mr. Dunfee proceeded to trial (a stipulated bench trial) and was convicted on Count Two, *i.e.*, 18 USC 1512; (ii) the Supreme Court subsequently concluded the construction posited by the Government on 18 USC 1512 was too broad; and (iii) accordingly, and consistent with the Court's *Order* (Doc. No. 76), the conviction on Count Two could not stand and, thus, the Court vacated the verdict on Count Two and dismissed the charge.  To quote the Court during this colloquy, Mr. Dunfee "desired to resolve this matter and the only reason he didn't resolve it was because of the dispute the parties had regarding this statute." Thus, consistent with the indication of the Court earlier in this case, and consistent the facts themselves, Mr. Dunfee is clearly entitled to the initial two-level decrease under USSG §3E1.1(a) for acceptance of responsibility with respect to the offenses for which he is proceeding to sentencing, *i.e.*, Count One and Count Three.

***Government's Opposition to Decrease for Acceptance of Responsibility***.  In continuing to oppose granting Mr. Dunfee any credit for acceptance of responsibility, the Government has essentially maintained that no such credit should be afforded because: (i) "the defendant did not stipulate to key facts in this case"; and (ii) "the defendant rejected earlier offers from the government for a stipulated trial" thereby allegedly causing "the government to expend additional resources to prepare for trial."  The Government is wrong and misrepresents the facts and the law on both accounts.

***Stipulating to Key Facts***.  Initially, the Government claims Mr. Dunfee did not stipulate to key facts in this case.  At the outset, it is noteworthy that the Government has not identified a single proposed stipulated fact which it initially tendered or proposed to Mr. Dunfee that, in turn, Mr. Dunfee rejected.  In proceeding to a stipulated trial, the Government developed the initial proposed stipulated facts and, thus, could, subject to negotiations, include anything it desired. Naturally, though, if the Government did not previously propose a stipulated fact, it should not now be heard to claim that some other facts were not stipulated.

Discussions amongst counsel concerning a potential stipulated trial start in or about August 2023, with the Government expressly inquiring whether Mr. Dunfee decided "to proceed with a stipulated 1512 bench trial".  Ultimately, the Government tendered a proposed set of stipulations in early September 2023.  Ensuing discussions amongst counsel focused more on efforts by the

Government to go beyond stipulations of factual matters to including stipulated legal conclusions, especially as they related to the Count Two (the 1512 offense).

These discussions, in turn, resulted in the Government specially questioning in an email of whether "we also need to discuss whether Mr. Dunfee is planning on contesting the 1512 at the potential stipulated trial (not just reserving his rights to appeal).  If so, the government may wish to contest whether Mr. Dunfee gets credit for acceptance of responsibility, since it would be a contested trial, and we may not choose to proceed solely via stipulations.  The fully stipulated trial is designed to be the functional equivalent of a conditional plea reserving your right to appeal one issue."   Thus, at that stage, the Government recognized Mr. Dunfee was accepting responsibility for the offenses other than Count Two (the 1512 offense which was ultimately dismissed).

As a result of discussions concerning the Government initially seeking stipulations on legal conclusions, the Government tendered a revised proposed stipulations on November 28, 2023.  Through ensuing discussions, the parties were ultimately able to agree to stipulated facts for which the case proceeded to a stipulated trial.   And included within the stipulations were admission by Mr. Dunfee of numerous videos documenting his actions and conduct that day, including his use of a megaphone and his comments to the crowd.

As noted above, the Government has not identified a stipulated fact which it sought assent from Mr. Dunfee but for which he refused to stipulate.  In fact, a comparison between the initial proposed stipulated facts proposed by the

Government in September 2023 and the final stipulated facts for which the matter proceeded to trial reveal no substantive or material difference in terms of factual matters.  For your reference, a redline comparison between the initial proposed stipulated facts and the final trial version is attached (with strikethroughs being removed from the initial proposed stipulations and the underlines ultimately added to the final stipulation).[1]  This redline clearly demonstrates the lack of any basis to the Government's claim that Mr. Dunfee refused to stipulate to key facts in this case.[2]  If the Government desired stipulation to additional facts, they should have sought them.  But for the Government to now complain about something never sought in an effort to deny credit to Mr. Dunfee for acceptance of responsibility is disingenuous and in bad faith.

*Government Preparing for Trial*.  Finally, as for the Government also indicating it will seek to deny credit for acceptance of responsibility because it had to "expend additional resources to prepare for trial," this is not a proper basis by which to deny the two-level decrease for acceptance of responsibility under USSG §3E1.1(a).  Whether the Government had to "prepare for trial" goes to whether an additional one-level decrease should be granted for acceptance of

---

[1]  The redline version indicates all revisions by counsel "Curt Hartman" but this is a result of the compare function of Word and does not indicate the actual genesis of any particular insertion or deletion.

[2]  As indicated in the *Stipulations* (Doc. No. 61-1) ¶¶ *56 & 60*, Mr. Dunfee stipulated that, "[i]f the Court finds the existence of these [stipulated] facts beyond a reasonable doubt," then he "stipulate[d]that this evidence would establish each and every element for [Count One] [and [Count Three] of the Indictment."  These were in the initial proposed stipulations and Mr. Dunfee never took issue therewith.

responsibility under USSG §3E1.1(b) *after* the initial two-level decrease is granted under USSG §3E1.1(a).  "Once awarded the two-level reduction under § 3E1.1(a) for having clearly accepted responsibility for his offense, a defendant may qualify for an additional one-level reduction under U.S.S.G. § 3E1.1(b) if the Government so moves and states that the defendant timely notified the Government of his intention to plead guilty, 'thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.'" *United States v. Johnson*, 980 F.3d 1364, 1378 (11th Cir. 2020); *see United States v. Moore*, 394 F.3d 925, 929 (D.C. Cir. 2005)(affirming "the district court grante[ing]…a two-level reduction for acceptance of responsibility under § 3E1.1(a) but den[ying]… the additional one-level reduction available under subsection § 3E1.1(b)…. [T]he court concluded, 'Clearly the government prepared for trial – they didn't just have to prepare for a motions hearing but they had to file voir dire questions, other filings and jury instructions'")

 "Waste of government resources may not be considered under § 3E1.1(a)….  Nothing in the text or Application Notes of § 3E1.1 indicates that a district court may consider under § 3E1.1(a) the effect of delay on imposing preparation costs on the government and the court." *United States v. Hollis*, 823 F.3d 1045, 1048 (6th Cir. 2016); *accord United States v. Kumar*, 617 F.3d 612, 636 (2d Cir. 2010)("while the two-level reduction provided for in § 3E1.1(a) is for demonstration of acceptance of responsibility, the Sentencing Guidelines

specifically provide...the reduction of an additional point under § 3E1.1(b), ostensibly 'for helping the authorities save resources'").

"The fact that § 3E1.1 is split into two subsections indicates that the factors that the district court may consider when applying the two subsections are intended to be separate.... Conflating the two subsections ignores the Sentencing Commission's division of § 3E1.1 into two distinct subsections with two distinct reduction levels. The Sentencing Commission could have made § 3E1.1 a single section with acceptance of responsibility and waste of government resources as co-equal factors; instead, the Commission separated the policy goals of encouraging defendants to accept responsibility and of avoiding the waste of government resources by creating two subsections and assigning them different reduction levels." *Hollis*, 823 F.3d at 1048. Yet, that is precisely what the Government is seeking to accomplish through any argument against any credit for acceptance of responsibility under USSG §3E1.1(a), *i.e.*, to improperly bootstrap the standard for the additional one-level decrease onto the standard for the initial two-level decrease.

At the end of the day, the only reason this case proceeded to a stipulated bench trial, as opposed to a plea, was because of the now-dismissed Count Two (the 18 USC 1512 offense). Throughout the effort to arrive at stipulations, Mr. Dunfee consistently and repeatedly acknowledged and accepted responsibility for Count One and Count Three. *See* note 2*, supra.* And this was repeatedly represented to the Court. Mr. Dunfee is clearly entitled to the initial two-level decrease is granted under USSG §3E1.1(a) for acceptance of responsibility with

respect to the offenses for which he is proceeding to sentencing, i.e., Count One and Count Three.

### 5. Zero Point Offender

Mr. Dunfee objects to the PSR's determination that he does not qualify for the Zero-Point Offender adjustment pursuant to §4C1.1(a)(3) of the United States Sentencing Guidelines Manual (Guidelines Manual).  *See Final PSR* (Doc. No. 77) *¶90.*

As a preliminary matter, Mr. Dunfee has zero criminal history points. *Final PSR ¶94.* At issue is whether Mr. Dunfee used credible threats of violence during the offense conduct, precluding him from the two-level reduction for certain Zero-Point Offenders.  *See* USSG §4C1.1(a)(3); *Final PSR ¶54.*

The USSG does not define the term "use violence or credible threats of violence" within §4C1.1 or its commentary. When no definitions are provided, courts look to dictionary definitions to determine meaning. *See Kaufman v. Nielsen*, 896 F.3d 475, 485–87 (D.C. Cir. 2018). Courts in this district have issued several opinions discussing dictionary definitions of violence when considering §4C1.1 and found that violence is "'[t]he use of physical force,' typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *United States v. Bauer*, No. 21-cr-386-2 (TNM), 2024 WL 324234, at *2 (D.D.C. Jan. 29, 2024) (quoting "Violence," Black's Law Dictionary (11th ed. 2019), and "Violence," Webster's Third New International Dictionary

(1993)); see also *United States v. Yang*, No. 23-cr-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024); *United States v. Doolin*, No. 21-cr-447 (CJN), ECF No. 313, at 2 (D.D.C. June 17, 2024); *United States v. Kelly*, No. 21-cr-708 (RCL), 2024 WL 756642, at *7 (D.D.C. Feb. 23, 2024); *United States v. Hernandez*, No. 21-cr-445 (CKK), ECF No. 65, at 5 (D.D.C. Jan. 31, 2024).

The Court's decision in *Yang* is instructive.  Mr. Yang was convicted of a single felony count of civil disorder in violation of 18 U.S.C § 231(a)(3). Mr. Yang's conviction, like Mr. Dunfee's, stemmed from his conduct on January 6, 2021, at the United States Capitol.  Mr. Yang "stood near the front of the crowd close to the police line" in the Rotunda. *Yang*, 2024 WL 519962, at *1.  While in the crowd, Mr. Yang made "physical contact with officers twice." Id. First, "[w]hen a scuffle broke out nearby…Yang briefly grabbed an officer's wrist." *Id.*  Second, "[w]hen an officer approached from the side and pushed [another rioter] firmly with a baton, Yang…briefly grabbed the baton as [the other rioter] fell backward." *Id.*

In the *Yang* case, the Government included the following still photographs in its sentencing memorandum:



Image 8: Still from Government Exhibit 2 at 3:07:26 p.m., Showing Yang Grabbing Hold of the Wrist of a Police Officer Attempting to Push Rioters from the Rotunda.



Image 9: Still from Government Exhibit 2 at 3:07:26 p.m., Showing Yang Grabbing Hold of the Wrist of a Police Officer Attempting to Push Rioters from the Rotunda.

The government further represented that Mr. Yang "push[ed] back against the officers" and "remained at the front of the mob clashing with the officers." *Id.* at 12:



Image 10: Still from Government Exhibit 1 Showing Yang Pushing Officers Working to
Expel Rioters from the Rotunda at Approximately 3:08:56 p.m.

Nonetheless, the Court concluded that Mr. Yang's actions did not
constitute "violence" within the meaning of USSG § 4C1.1. *Yang*, 2024 WL
519962, at *4. While Mr. Yang may have used physical force in that "he briefly
made physical contact with two officers, the Court [found] that this *contact was
not made with an intent to harm.*" *Id.* (emphasis added). "Nor was this contact
accompanied by '*fury, vehemence, or outrage,' or the like.*" *Id.* (emphasis added).
As the Court in *Yang* explained, "[t]he throughline of the definitions of 'violence'
is a degree of aggressiveness that [wa]s not present in th[at] case." *Id.* And, even
though Mr. Yang was "near the front of the line opposing the line of officers," and
twice made physical contact with officers, the Court concluded that "Yang did
not act with the degree of aggression necessary to fairly characterize his actions
as 'violence' under the provisions of acceptance of responsibility under USSG
§3E1.1. *Id.*

The same reasoning applies with even more force here.  Mr. Dunfee did not punch, kick, grab, or throw any objects at law enforcement officers; indeed, he never made direct contact with law enforcement officers.  *See Gov't Memo. Opposing Motion to Dismiss* (Doc. No. 36), *at 3-10.*  While Mr. Dunfee was part of the group of individuals pushing against the police line at the East Front of the Capitol, he did not use any items whatsoever, let alone in a violent manner.  Like Mr. Yang, Mr. Dunfee's conduct did not involve the "degree of aggression necessary to fairly characterize his actions as violence." *Yang*, 2024 WL 519962, at *4.  Additionally, Mr. Dunfee's conduct did not involve the intent to harm or injure anyone. And crucially and unlike Mr. Yang, Mr. Dunfee did not make direct physical contact with any law enforcement officer.

A conviction under 18 U.S.C. § 231(a)(3) does not categorically preclude an individual from an adjustment pursuant to USSG § 4C1.1. See, e.g., *United States v. Mostofsky*, 579 F. Supp. 3d 9, 24 (D.D.C. 2021)(finding that § 231(a)(3) reaches beyond "only violent conduct"); *United States v. McHugh*, 583 F. Supp. 3d 1, 29 (D.D.C. 2022) (similar); *Yang*, 2024 WL 519962, at *2 (granting an Amendment 821 sentence reduction where "Yang pleaded guilty to the civil disorder count," in violation of § 231(a)(3)).  In fact, the government has expressly argued to other courts that a conviction for civil disorder pursuant to 18 U.S.C. § 231(a)(3) "does not require a particular defendant to engage in acts of violence" and "it is possible for nonviolent acts to also fall within the statute's prohibition." *See Gov't Opp'n to Mot. to Dismiss in Mostofsky*, No. 21-cr-138 (JEB), ECF No. 57 *at 48-49.*

Courts in this District that have addressed the issue have uniformly found that USSG §4C1.1(a)(3)'s violence factor requires the defendant to have personally used violence or made credible threats of violence to be disqualified. It is simply not enough that Mr. Dunfee pushing against the barrier constitutes violence. *See, e.g., Yang*, 2024 WL 519962, at *4 (rejecting the government's violence-by-presence theory of §4C1.1(a)(3) and "join[ing] the view of at least six other judges in this District," including Judges Kollar-Kotelly, McFadden, Friedrich, Mehta, Howell, and Boasberg); *Doolin*, No. 21-cr-447 (CJN), ECF No. 313 at 2 (finding the defendant, who stole a police riot shield, passed the shield to others, and "participated in a heave-ho with rioters against police officers[,]" "did not engage in violence in the ordinary meaning of the term" and thus "would have qualified for, and received, the 2-point reduction under U.S.S.G. §4C1.1"). As such, even though Mr. Dunfee was convicted via stipulations to civil disorder, he did not "use violence or credible threats of violence" himself and is thus eligible for a two-level decrease under U.S.S.G. §4C1.

### 6. Defense's Proposed Calculation of Guidelines

As stated above, Probation has utilized a level 10, and the base offense level is not in dispute. Similarly, the 3-level adjustment for physical contact is not in dispute resulting in an adjusted level of 13.

However, depending on the rulings of the Court, Mr. Dunfee's total offense level could be as high as a 17, as advocated by the Government or as low as a 9 should acceptance of responsibility and the Zero-Point Offender adjustment be

granted.  These offense levels correspond, respectively, to 24 to 30 months versus 4 to 10 months.

## II.     Argument

### A.     Sentencing Discretion and Section 3553 Statutory Factors

The Guidelines are only advisory despite their mandatory language. *See United States v. Booker*, 543 U.S. 220, 245 (2005). A district court must therefore "consider Guidelines ranges," but is permitted "to tailor the sentence in light of other statutory concerns as well." *Id.* The Supreme Court in *Gall v. United States*, 552 U.S. 38 (2007), outlined the process to follow:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.  The Guidelines are not the only consideration, however.  Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

*Id.* at 49-50 (emphasis added)(citations and punctuation omitted).

Thus, in fashioning an appropriate sentence, this Court must consider the Guidelines along with the other factors set forth in 18 U.S.C. § 3553(a), *see Booker*, 543 U.S. at 260, and treat the Guidelines "as one factor among several" that § 3553(a) requires courts to consider.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).

Pursuant to 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." Further, under 18 U.S.C. § 3582, the court, in considering the factors in § 3553(a) and their applicability, should recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added).

Although the guidelines range will generally align with the objectives of the § 3553(a) factors, that is not always the case. As the Supreme Court said in *Kimbrough*:

> [I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. The sentencing judge, on the other hand, has greater familiarity with the individual case and the individual defendant before him than the Commission or the appeals court. He is therefore in a superior position to find facts and judge their import under § 3553(a) in each particular case. In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply.

*Kimbrough*, 552 U.S. at 109 (emphasis added) (citations and punctuation omitted).

## B.    A Sentence of Home Confinement Is Appropriate in This Case.

When considering the factors under 18 U.S.C. § 3553(a), a sentence of home confinement is appropriate in Mr. Dunfee's case as it is sufficient but not greater than necessary to comply with the purposes of sentencing.

### 1.  Nature and Circumstances of the Offense

Through the stipulations and the testimony, this Court has extensive knowledge of the nature and circumstances of the offense.

### 2.  History and Characteristics of William Dunfee

The introductory section of this memorandum provided significant background on the history and characteristics of Mr. Dunfee.  In addition to what has been provided, Mr. Dunfee has lived his 59 years with conviction, but always with a desire to help others.  He has experienced tragedy through the loss of a grandson in a farm-related accident.  He has worked multiple jobs and operated his businesses with a vision to support his family, friends, and community.  He is not a violent man and has no criminal charges or reports that characterize him as such.

As to his health and noted in *Final PSR* (Doc. No. 77) ¶ 113, medical records reveal that:

> he suffers from arrhythmia and shortness of breath. He has diagnoses of asymptomatic coronary heart disease, left ventricular hypertrophy, obstructive sleep apnea, and atypical atrial flutter. [Additional [r]ecords received from the Genesis Health Care System showed that he was admitted on April 14, 2023, for ventricular tachycardia, syncope, and collapse.

Mr. Dunfee is almost 60 years old and wants the opportunity to show that the law-abiding man that he has been for those 60 years is the man that he will be for his remaining years.  There will be no future lapses in judgment.

### 3.      The Need for the Sentence Imposed

18 U.S.C. § Section 3553(a)(2) lists the four purposes of sentencing, which can be summarized as: just punishment, deterrence, protection of the public, and rehabilitation.

As to just punishment, a sentence of home confinement is appropriate for a 59-year-old man, with only a trespassing arrest from almost twenty years ago, and a large circle of family and friends that love him and need him.  That sentence along with continued supervision would satisfy the goals of sentencing. Mr. Dunfee will not make the mistakes he made post-election 2020 in the future. The advisory guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom."  *See United States v. Johnson,* 964 F.2d 124,125 (2nd Cir. 1992).

### 4.      The Kinds of Sentences Available

Pursuant to *Booker,* this Court has significant discretion in fashioning a sentence that is "reasonable" based on §3553(a), including incarceration and supervised release. In the instant case, a guidelines prison sentence would contravene 18 U.S.C. § 3553(a) and the 'Parsimony Provision' which proscribes the imposition of a sentence that is greater than necessary to achieve the statutory goals as set forth above.

Mr. Dunfee respectfully requests that the Court sentence him to 12 months home confinement. This will be sufficient to deter him from ever committing another criminal act.

### 5.   Avoiding Sentence Disparity

Comparing Mr. Dunfee's conduct to that of the other individuals below who were convicted of only an 18 U.S.C. § 231 offense, the Court can see why a sentence of home confinement is "sufficient, but not greater than necessary."

As for Mr. Dunfee's request for a non-incarceration sentence, if those who breached the U.S. Capitol on January 6, 2021, can be provided an opportunity to receive a probationary sentence, so too can Mr. Dunfee.  There are 71 Capitol breach defendants for whose conduct the Government did not even seek a sentence of incarceration.[3]  This number included one who had been convicted of Civil Disorder (Luis Enrique Colon, 1:21-CR-160-TJK) whom the Government did not even seek a period of home detention. In addition, there were another 172 Capitol breach defendants for whom the Government sought a sentence of incarceration at sentencing, but judges in this District refused to impose a period of incarceration.

Finally, there are many defendants where the sentence imposed was less than the sentence requested by the Government, often significantly less.  A sampling of such defendants can be found below.  All defendants except one included in the chart below were convicted of only one felony, Civil Disorder, like Mr. Dunfee.  The one exception is defendant, Matthew Council, Case No. 1:21-CR-00207-TNM, who was convicted of two felonies 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111(a)(1).   He is included to show the disparity between the

---

[3] See Government's Sentencing Table of January 6 Capitol Defendants, dated September 9, 2024.  https://www.justice.gov/usao-dc/media/1331746/dl?inline

Government's recommended sentence of 30 months incarceration and the imposed sentence of 60 months probation.

| Defendant and case | Charge(s) | Govt. Recommended Sentence | Sentence Imposed |
|---|---|---|---|
| Hart, Timothy Allen 1:21-CR-540-DLF | 18 USC 231(a)(3) | 4 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | <br><br>36 months supervised release<br><br>$2000 restitution |
| Preller, Brian 1:23-CR-00045-TMN | 18 USC 231(a)(3) | 8 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | <br>60 months supervised release<br><br>$2,000 restitution<br><br>40 hours' community service |
| Gerwatowski, Eric 1:22-cr-125-JMC | 18 USC 231(a)(3) | 3 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 30 days home detention<br><br>24 months probation<br><br>$2,000 restitution<br><br>60 hours community service |
| Council, Matthew 1:21-CR-00207-TNM | 18 USC 231(a)(3)<br>18 USC 111(a)(1)<br>18 USC 1752(a)(1)<br>18 USC 1752(a)(2)<br>40 USC 5104(e)(2) | 30 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 6 months home detention<br><br>60 months probation,<br><br>$2,000 restitution<br><br>100 hours community service |
| Yang, Tyng 1:23-CR-00100-JDB | 18 USC  231(a)(3) | 11 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 6 days intermittent confinement<br><br>24 months probation<br><br>$2,000 restitution<br><br>$1,000 fine |
| White, Victoria 1:21-CR-00563-JDB | 18 USC  231(a)(3 | 4 months incarceration<br><br><br>36 months supervised release<br><br>$2,000 restitution | 8 days intermittent confinement/3 months home detention<br><br>24 months probation |

| Hazelton, Stephanie 1:21-CR-00030-JDB | 18 USC 231(a)(2) and (a)(3) | 11 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 10 days incarceration / 90 days home detention<br><br>24 months supervised release<br><br>$2,000 restitution |
|---|---|---|---|
| Cole, Benjamin 1:23-CR-113-TNM | 18 USC 231 | 11 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 14 days intermittent confinement / 3 months home detention<br><br>48 months probation<br><br>$2,000 restitution<br><br>40 hours community service |
| Johnson, Daryl 1:21-CR-407-DLF | 18 USC 231 | 3 months incarceration<br><br>12 months supervised release | 30 days incarceration<br><br>12 months supervised release<br><br>$2,000 fine<br><br>$2,000 restitution |
| Montoni, Corrine 1:23-CR-00195-RCL | 18 USC 231 | 3 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 30 days incarceration<br><br>24 months supervised release<br><br>$2,000 restitution |
| Konold, Cory 1:21-CR-00160-TJK | 18 USC 231 | 3 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 30 days incarceration<br><br>24 months supervised release<br><br>$2,000 restitution |
| Konold, Felicia 1:21-CR-00160-TJK | 18 USC 231 | 3 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 45 days incarceration<br><br>24 months supervised release<br><br>$2,000 restitution |
| Grayson, Kenneth 1:21-CR-00224-TSC | 18 USC 231 | 3 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 60 days incarceration<br><br>24 months supervised release<br><br>$2,000 restitution |
| Sirr, Bernard 1:22-CR-00259 | 18 USC 231(a)(3)<br><br>18 USC1752(a)(1)<br><br>18 USC1752(a)(4)<br><br>40 USC 5104(e)(2)(D)<br><br>40 USC 5104(e)(2)(F) | 10 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 2 months incarceration<br><br>12 months supervised release<br><br>$2,000 restitution |

| Giberson, Larry 1:23-CR-00115-CJN | 18 USC 231(a)(3) | 11 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 2 months incarceration /6 months home detention<br><br>6 months supervised release<br><br>$2,000 restitution |
|---|---|---|---|
| Pavlik, Joseph 1:23-CR-00045-TNM | 18 USC 231(a)(3)<br>18 USC1752(a)(1)<br>18 USC1752(a)(4)<br>40 USC 5104(e)(2)(D)<br>40 USC 5104(e)(2)(F) | 13 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 60 days incarceration /6 months home detention<br><br>24 months supervised release<br><br>$2,000 restitution<br><br>$6,000 fine |
| Stecher, Ezekiel 1:21-CR-00720-RDM | 18 USC 231(a)(3) | 90 days incarceration<br><br>36 months supervised release | 60 days incarceration<br><br>24 months supervised release<br><br>$2,000 restitution |
| Cole, Benjamin 1:23-CR-00113-TNM | 18 USC 231 | 11 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution | 14 days intermittent confinement / 3 months home detention<br><br>48 months probation<br><br>$2,000 restitution<br><br>40 hours community service |
| Reyher, Jessica 1:23-CR-00138-RBW | 18 USC 231(a)(3) | 9 months incarceration<br>36 months supervised release<br>$2,000 restitution | 90 days incarceration<br>36 months supervised release<br>$2,000 restitution |
| Reyher, Arthur 1:23-CR-00138-RBW | 18 USC 231(a)(3) | 12 months incarceration<br>36 months supervised release<br>$2,000 restitution | 8 months incarceration<br><br>36 months supervised release<br><br>$2,000 restitution<br><br>200 hours community service |

| | | | |
|---|---|---|---|
| Cook, Richard<br>1:23-CR-00138 RBW | 18 USC 231(a)(3)<br>18 USC1752(a)(1)<br>18 USC1752(a)(2)<br>18 USC1752(a)(4)<br>40 USC 5104(e)(2)(E)<br>40 USC 5104(e)(2)(F) | 24 months incarceration<br><br>36 months supervised release<br>$2,000 restitution | 18 months incarceration<br><br>36 months supervised release<br>$2,000 restitution |
| Colon, Luis<br>1:21-CR-160-TJK | 18 USC 231(a)(3) | 24 months probation<br>$2,000 restitution | 24 months probation<br>$2,000 restitution |
| Cooke, Nolan<br>1:22-CR-00052-RCL | 18 USC 231(a)(3) | 11 months incarceration<br>36 months supervised release | 366 days incarceration<br>36 months supervised release |
| Shough, Geoffrey<br>1:22-CR-00197-DLF | 18 USC 231(a)(3) | 11 months incarceration<br>36 months supervised release<br>$2,000 restitution | 6 months incarceration<br>12 months supervised release<br>$2,000 restitution<br>200 hours community service |
| Krill, Peter Jr.<br>1:23-CR-00342-JEB | 18 USC 231(a)(3) | 13 months incarceration<br>36 months supervised release<br>$2,000 restitution | 9 months incarceration<br>12 months supervised release<br>$2,000 restitution |
| Nolf, Anthony<br>1:23-CR-162-BAH | 18 USC 231(a)(3) | 11 months incarceration<br><br>36 months supervised release<br>$2000 restitution | 3 months incarceration / 5 months home detention<br>31 months supervised release<br>$2000 restitution |

In further review of the sentences imposed for those convicted of only one felony, Civil Disorder, only 8 defendants have received a sentence longer than 12 months and 1 day.  The defendant receiving the longest sentence was Anthony Sargent, Case No. 1:21-CR-00639.   He received the maximum 60-month

sentence.   The U.S. Attorney's Office press release[4] describes his conduct as follows:

> during the January 6 attack on the Capitol, Sargent grabbed and pushed a police officer to prevent him from detaining a rioter; twice shoved two officers away from the Capitol as they tried to retreat to safety; twice threw a heavy object at a set of doors leading into the Capitol with the intent to break the doors' glass panels, while officers stood behind those doors; and encouraged other rioters to damage the same set of doors. Sargent's violence was not spontaneous—as a member of the Proud Boys, he vocalized his support for a riot and civil war on the group's messaging platform in the days leading up to January 6.

While Mr. Dunfee made indirect physical contact with officers, his conduct toward officers or property that day does not compare with that of Sargent.

After Sargent, the second longest sentence imposed was Michael Sparks who on a sentencing remand after *Fischer* vacated his 18 U.S.C. 1512 conviction was sentenced to 53 months.  In an article after his resentencing CNN described Sparks activity on January 6, 2021[5]:

> One might say Sparks helped light the fire that day," prosecutors continued, "using his preparation and planning — including his protective body armor — to steel himself against the officers attempting to hold back the mob."

> Sparks was part of the mob that rushed to the Senate wing door of the Capitol on January 6 and was the first to climb into the building through a window broken by another rioter.

> Prosecutors also say that he called for a civil war in online posts and purchased a rifle in the days before the riot.

---

[4]       https://www.justice.gov/usao-dc/pr/florida-man-sentenced-60-months-prison-felony-and-misdemeanor-charges-actions-during-jan (last accessed September 16, 2024)

[5] https://edition.cnn.com/2024/08/27/politics/michael-sparks-january-6-sentenced (last accessed September 16, 2024.

> Two weeks before the riot, Sparks wrote online above an image of then-Speaker of the House Nancy Pelosi and then-Minority Leader of the Senate Chuck Schumer, "How about we the people drag you out by your face."

Mr. Dunfee's conduct is not comparable to Sparks.  He wore no body armor; he made no violent threats toward elected officials; he is not connected to purchasing or possessing any firearm to foment revolution.  He should not be sentenced similarly to Sparks.

After Sparks, the next longest sentence imposed was Thomas Hamner, Case No. 1:21-CR-00689-ABJ, who was sentenced to 30 months when the Government requested 60 months.  Shelly Stallings, Case No. 1:21-CR-00178-APM, who was sentenced to 24 months when the Government requested 51 months.  Four additional defendants were sentenced to 18 months and one defendant to 15 months in prison.

When comparing Mr. Dunfee with other defendants convicted of Civil Disorder alone, a sentence of home detention would be the most appropriate sentence to avoid sentencing disparities.  He is not an outlier as he inflicted no harm to person or property.  He did not bring a weapon or body armor.  His conduct is consistent with the vast majority of those sentence who received sentences of 12 months and 1 day or less.

## III.  <u>Conclusion</u>

Wherefore, considering all the reasons above, and those presented at the sentencing hearing, Mr. Dunfee respectfully requests that this Honorable Court exercise its discretion and impose a downward variance.  Mr. Dunfee requests

that he be given a sentence that is reasonable, but not greater than necessary and accounts for his contributions to society and respectfully requests that the Court sentence Mr. Dunfee to home confinement, 5 years supervised release and 200 hours community service.

Respectfully submitted,

*/s/ Curt C. Hartman*
Thomas W. Kidd, Jr.
Kidd & Urling LLC
9435 Waterstone Blvd Suite #140,
Cincinnati, Ohio 45249
(513) 733-3080/Fax (513) 731-7230
tkidd@kiddurlinglaw.com


Curt C. Hartman
The Law Firm of Curt C. Hartman
7394 Ridgepoint Drive, Suite 8
Cincinnati, Ohio  45230
(513) 379-2923
hartmanlawfirm@fuse.net


## CERTIFICATE OF SERVICE

I hereby certify that notice of the filing of the foregoing will be sent via the Court's CM/ECF system, to all counsel of record on the date of filing.

*/s/ Curt C. Hartman*